**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
         jglatt@bursor.com

**GUCOVSCHI ROZENSHTEYN, PLLC.**
Adrian Gucovschi (*pro hac vice* forthcoming)
Benjamin Rozenshteyn (*pro hac vice* forthcoming)
140 Broadway, Suite 4667
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com
E-Mail: ben@gr-firm.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN COBBS, individually and on behalf of all other persons similarly situated,<br><br>                 Plaintiff,<br><br>     v.<br><br>VNGR BEVERAGE, LLC d/b/a POPPI,<br><br>                 Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kristin Cobbs ("Plaintiff") brings this action on behalf of herself and all others similarly situated against VNGR Beverage LLC d/b/a Poppi ("Defendant").  Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on her personal knowledge.

## NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of herself and similarly situated consumers who purchased Poppi Prebiotic Sodas ("Poppi" or the "Products").

2.      Poppi has quickly climbed the ranks as one of the most popular beverages in the United States.  From its modest beginning as an apple-cider vinegar soda sold at local farmers' markets, Poppi skyrocketed in popularity after appearing on the show Shark Tank and securing a place on the shelves of Whole Foods Market.  As of 2024, Poppi's sales figures have topped $100 million dollars and continue to grow,[1] representing 19% in the US market share, even surpassing Coke by 1.5 times.[2]

3.      Defendant's success is largely owed to its ability to preserve the flavor and sweetness of traditional sodas while claiming to be "gut healthy" due to its inclusion of "prebiotics"—a specific type of dietary fiber commonly found in food like bananas and whole grains.  However, Defendant's Poppi soda only contains **two grams of prebiotic fiber**, an amount too low to cause meaningful gut health benefits for the consumer from just one can.  Accordingly, a consumer would need to drink **more than four Poppi sodas in a day** to realize any potential health benefits from its prebiotic fiber.  However, even if a consumer were to do this, Poppi's high sugar content would offset most, if not all, of these purported gut health benefits.

4.      That is, despite Defendant's alluring representations, the Products are predominately composed of "cane sugar," meaning that a consumer who does drink enough Poppi sodas to realize

---

[1] Christopher Doering, *Healthy Soda Brand Poppi Denies Being M&A Target of Large Beverage Companies,* RETAIL DIVE (May 3, 2024), *available* https://www.retaildive.com/news/healthy-soda-brand-poppi-denies-acquisition-target-coca-cola/715080/ (last accessed May 16, 2024).

[2] Yola Robert, *How Poppie is Reshaping Soda Culture for Gen Z and Millennials,* FORBES (Mar. 5, 2024), *available* https://www.forbes.com/sites/yolarobert1/2024/03/05/how-poppi-is-reshaping-soda-culture-for-gen-z-and-millennials/?sh=473c08f47466 (last accessed May 16, 2024).

any prebiotic benefits would also need to consume harmful levels of cane sugar, which has been shown to actually harm gut health.

5.      Although Poppi's rise in popularity can be attributed to its enticing flavors and clever marketing, the core of Poppi's success is primarily owed to a particular ingredient: agave inulin, the Products' so-called "Prebiotic."  But, despite Poppi's "prebiotic" marketing claims, which assure consumers, on the can, that they can "Be Gut Happy [and] Be Gut Healthy," as one nutritionist bluntly explained: the Products "are basically sugared water."[3]

6.      Accordingly, Plaintiff brings claims against Defendant individually and on behalf of a class of all others similarly situated for violations of state consumer protection laws, and unjust enrichment.

## PARTIES

7.      Plaintiff Kristin Cobbs is a citizen is California citizen residing in San Francisco, California.  Plaintiff purchased Defendant's Products for her personal use on multiple occasions throughout the statute of limitations period, with her last purchase occurring in or about March 2024.  Ms. Cobbs made these purchases from local grocery stores and online from her home in San Francisco, California.  Prior to making her purchases, Ms. Cobbs saw that the Products were labeled and marketed as a "Prebiotic Soda" made "For a Healthy Gut," along with the slogan "Be Gut Happy. Be Gut Healthy" and side label claims and vignettes representing that the Products have "Prebiotics for a Healthy Gut."  Ms. Cobbs saw those representations prior to and at the time of her purchases and understood them as representations and warranties that the Products contained "prebiotics" that would make her "gut healthy."  Thus, Plaintiff reasonably relied on Defendant's representations when she decided to purchase the Products.  Accordingly, those representations and warranties were part of the basis of her bargains, in that Ms. Cobbs would not have purchased the Products on the same terms had she known that those representations were not true.  Furthermore, in making her purchases, Ms. Cobbs paid a substantial price premium due to Defendant's false and

---

[3] Korin Miller, *Poppie's Super Bowl Ad Raises Questions About Prebiotic Soda.  What Do These Beverages Do?* YAHOO! LIFE (Feb. 12, 2024) *available* https://www.yahoo.com/lifestyle/poppis-super-bowl-ad-raises-questions-about-prebiotic-soda-what-do-these-beverages-do-194722830.html (last accessed May 16, 2024).

misleading claims regarding the Products' purported health benefits.  Ms. Cobbs, however, did not receive the benefit of her bargains because the Products did not, in fact, contain enough "prebiotics" to achieve any meaningful "gut health."  Likewise, Ms. Cobbs was unaware that excessive consumption of the Products could negatively impact her health.  Had Ms. Cobbs known that Defendant's representations and warranties about the Products were false, she would not have purchased the Products or would have paid substantially less for them.

8.      Defendant VNGR Beverage LLC, is a Texas limited liability corporation with its principal place of business located at 31 Navasota Street Suite 270 Austin, Texas.  Defendant manufactures, markets, and sells the Products throughout California and the United States.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A)-(C) because this case is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000.00 exclusive of interest and costs, and Plaintiff, as well as most members of the proposed class, are citizens of states different from Defendant.

10.     This Court also has personal jurisdiction over Defendant because it conducts and transacts business in the state of California, including this District, such as entering into contracts to supply goods within this District.  Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this District, including Plaintiff's purchases.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District.

## FACTUAL ALLEGATIONS

### I.      The Products' On-Label Representations

12.     Defendant manufactures, markets, and sells its "prebiotic" sodas under the brand name Poppi, online and in grocery stores throughout California and the United States.

13.     Founded in 2016, Poppi began as a healthy alternative to traditional sodas, combining healthy ingredients and juices, with an emphasis on apple cider vinegar.  From its humble beginnings at farmers' markets, the Products' popularity sky-rocketed in 2018 after being

featured on Shark Tank.[4]  Following a dynamic rebranding, Poppi was introduced into Whole Foods Market, igniting a surge in growth that reached its zenith in a Super Bowl advertisement in 2024 where Defendant proudly announced Poppi as "the future of soda."[5]

14.     As shown below, on the Products' cans, Defendant conspicuously represents that Poppi is a "Prebiotic Soda" made "For a Healthy Gut."  These representations are reinforced by the slogan "Be Gut Happy.  Be Gut Healthy," accompanied by side label claims and vignettes representing that the Products have "Prebiotics for a Healthy Gut."  Cumulatively, these claims are referred to as the "Prebiotic Representations."

[Intentionally Left Blank]

---

[4] Nelson Ayers, *Was Poppi on Shark Tank? A Detailed Look at the Prebiotic Soda Brand's Appearance and Success*, 33 SQUARE (Sept. 30, 2023), *available* https://www.33rdsquare.com/was-poppi-on-shark-tank-a-detailed-look-at-the-prebiotic-soda-brands-appearance-and-success/ (last accessed May 16, 2024).

[5] Daily Commercials, *Poppi Super Bowl 2024 Ad – The Future of Soda is Now,* (Feb. 11, 2024) *available* https://dailycommercials.com/poppi-super-bowl-2024-ad-the-future-of-soda-is-now/ (last accessed May 16, 2024).

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15
16
17
18
19
20
21
22
23
24
25
26
27
28



15.     Defendant's Amazon sales page makes similar prebiotic presentations:






16.     Despite Defendant's Prebiotic Representations, the Products do not provide meaningful prebiotic effects, as discussed below.  Because ordinary consumers do not have expertise in pre- and probiotic science, they purchase, and continue to purchase, Defendant's Products under the erroneous but reasonable belief that the Products are providing prebiotic gut benefits due to Poppi's false and misleading Prebiotic Representations.

## II.    Overview of Prebiotics and Agave Inulin

17.    Prebiotics are a type of dietary fiber that stimulates the growth of healthy bacteria in the gut.  These bacteria are known as probiotics.[6]  Instead of being digested by the body, these probiotic fibers travel to the large intestine, where they promote the growth of healthy gut bacteria that help aid digestion and regulate the immune system.[7]

18.    Poppi claims to be a prebiotic soda due to its inclusion of agave inulin, a type of natural soluble fiber extracted from the agave plant that may function as a prebiotic.[8]  Although fibers like agave inulin may sound exotic and unique, most adults are able to consume enough prebiotics through a variety of regular foods, including, "whole grains, bananas, greens, onions, garlic, soybeans and artichokes."[9]  Indeed, experts recommend that people consume their prebiotics from these fiber-rich foods instead of dietary supplements (like agave inulin) because "consumption of a singular fiber type restricts the nutritional support available to our microbiome, and can limit overall diversity that is crucial for a healthy microbiome."[10]

19.     In addition, consuming too much inulin can lead to adverse health results.  Studies show that taking as little as 2.5 grams of prebiotic supplements, including agave inulin, can lead to a build-up of gas, causing abdominal discomfort, while higher doses (40-50 grams per day) can

---

[6] Barbara Bolen, Ph.D., *What are Prebiotics?*, VERYWELL HEALTH (Mar. 23, 2024) *available* https://www.verywellhealth.com/prebiotics-and-ibs-1944748 (last accessed May 16, 2024).

[7] Cleveland Clinic, *How Your Gut Microbiome Impacts Your Health*, (June 8, 2022), *available available* https://health.clevelandclinic.org/gut-microbiome (last accessed May 16, 2024).

[8] Although the Products also contain apple cider vinegar ("AVC") experts largely agree that that ingredient does not function as prebiotic in food products.  *See* Janet Helm, MS, RDN, *Apple Cider Vinega: Myths vs. Facts,* U.S. NEWS & WORLD REPORTS (May 4, 2023) *available* https://health.usnews.com/wellness/food/articles/apple-cider-vinegar-benefits.  Nor does Defendant claim to derive its prebiotics from that ingredient.  *See* Poppi, https://drinkpoppi.com/pages/benefits-101 ("Each can of poppi includes agave inulin, a prebiotic (and natural sweetener!) extracted from the agave tequilana plant.").

[9] Katherine Zeratsky, R.D., L.D., *What Are Probiotics and Prebiotics?* MAYO CLINIC (July 2, 2022), *available* https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/expert-answers/probiotics/faq-20058065 (last accessed May 16, 2024).

[10] Maya Shetty, BS, *Probiotics, Prebiotics, and Postbiotics: What Are They and Why Are They Important?* STANFORD UNIV.: LIFESTYLE MEDICINE (Apr. 8, 2024) *available* https://longevity.stanford.edu/lifestyle/2024/04/08/probiotics-prebiotics-and-postbiotics-what-are-they-and-why-are-they-important/ (last accessed May 16, 2024).

---

lead to diarrhea.[11]  This is particularly problematic for people with existing digestive issues like irritable bowel syndrome or dietary sensitivities.[12]

20.     These findings are supported by other studies that show additional negative health implications of consuming too much agave inulin.  For instance, a recent study found that consuming agave inulin over a long time period can significantly alter the gut's microenvironment, leading to immune system disruptions.[13]  Another study found that an inulin based diet can lead to inflammation and even liver damage at doses as small as 10 to 30 grams *per day* over a 3-week period.[14]  As summarized in a recent article by Weill Cornell Medicine, although "[i]nulin is now everywhere, from clinical trials to prebiotic sodas," a recent study found that "foods with added [inulin] fiber, stimulates microbes in the gut to release bile acids that increase the production of molecules that promote intestinal inflammation."[15] (emphasis added).

21.     Critically, existing research on the positive prebiotics effects of agave inulin, found an absence of any "significant changes" on the few reliable markers of microbiome health, such as short-chain fatty acids ("SCFAs"). [16]  In particular, a recent meta-study on the effects of various prebiotics based on clinical trials found that agave inulin had no meaningful impact on SCFAs, even when administered ***at 7.5 grams per day*** over a period of three weeks.[17]  Indeed, the authors

---

[11] Michele Pier Luca Guarino, *et al. Mechanisms of Action of Prebiotics and Their Effects on Gastro-Intestinal Disorders in Adults*, NUTRIENTS, vol. 12:4, 1037-39 Apr. 2020, doi:10.3390/nu12041037.

[12] Joey Conners, *Is Agave Inulin Bad for You?* IIBFY (Feb. 3, 2024), *available* https://www.isitbadforyou.com/questions/is-agave-inulin-bad-for-you (last accessed May 16, 2024).

[13] Renan Oliveira Corrêa, et al., *Inulin diet uncovers complex diet-microbiota-immune cell interactions remodeling the gut epithelium*. MICROBIOME, vol. 11,1 90. 26 Apr. 2023, *available* doi:10.1186/s40168-023-01520-2

[14] Samuel M. Lancaster, et al. *Global, distinctive, and personal changes in molecular and microbial profiles by specific fibers in humans*, CELL HOST & MICROBE vol. 30, 6 (2022): 848-862.e7, *available* doi:10.1016/j.chom. 2022.03.036.

[15] Weill Cornell Medicine, *Common Type of Fiber May Trigger Bowel Inflammation,* (May 13, 2024), *available* https://medicine.weill.cornell.edu/news/common-type-fiber-may-trigger-bowel-inflammation (last accessed May 16, 2024).

[16] Valentina Vinelli, et al., *Effects of Dietary Fibers on Short-Chain Fatty Acids and Gut Microbiota Composition in Healthy Adults: A Systematic Review,* NUTRIENTS vol. 14,13 2559. 21 Jun. 2022, available doi:10.3390/nu14132559.

[17] *Id.*

---

of that particular study concluded that they "did not detect a significant treatment effect of agave inulin supplementation alone[.]"[18]

22.     Nutrition researchers examining the prebiotic properties of Poppi have arrived at the same conclusions.  Citing to the same author that concluded that inulin can lead to inflammation and liver damage (*supra* ¶ 20), a journalist from NPR indicated that "the purified fibers that are added to foods," such as Poppi, "get fermented faster, by microbes that live near where the small intestine meets the large intestine," meaning that they are unable to "reach the microbes living further down the large intestine"—where durable and reliable gut changes occur.[19]  Another dietitian stated that she does not recommend consuming the agave inulin found in sodas like Poppi because "not only can it cause a lot of gas, but it's not the same as an insoluble fiber."[20]  Likewise, in an article published by Healthline, a gut health expert indicated that she "can't see much benefit" to drinking prebiotic sodas like Poppi, explaining that agave inulin "is a common trigger for bloating and gas, particularly for those with a sensitive digestive system, or people with irritable bowel syndrome (IBS)."[21]  The article also emphasized that sodas like Poppi "have a high sugar content, which can contribute to heart disease, some cancers, type 2 diabetes, and being overweight."[22]

### III.     Defendant's Prebiotic Representations Are False and Misleading

23.     Despite representing that Poppi is a "Prebiotic Soda" made "For a Healthy Gut," the Products fail to live up to these promises.  Specifically, the Products contain, *at most*, 2 grams of

---

[18] Hannah D. Holscher, et al., *Agave Inulin Supplementation Affects The Fecal Microbiota Of Healthy Adults Participating In A Randomized, Double-Blind, Placebo-Controlled, Crossover Trial*, THE J. OF NUTRITION 145.9 (2015): 2025-2032. available doi.: 10.3945/jn.115.21733.

[19] NPR.org, *Prebiotic sodas promise to boost your gut health. Here's what to eat instead*, (August 8, 2023), *available* https://www.npr.org/sections/health-shots/2023/08/08/1192329196/gut-health-fiber-probiotic-olipop-poppi (last accessed May 20, 2024).

[20] Verywell Health*, Is There Such a Thing as Healthy Soda?*, (April 15, 2024), *available* https://www.verywellhealth.com/healthy-soda-is-it-actually-good-for-you-8630508 (last accessed May 20, 2024).

[21] Healthline, *Can Probiotic Soda Really Help Improve Your Gut Health?*, May 20, 2024, *available* https://www.healthline.com/health-news/probiotic-soda-gut-health-benefits#Potential-risks-of-drinking-probiotic-and-prebiotic-sodas (last accessed May 20, 2024).

[22] *Id.*

---

prebiotics from agave inulin dietary fiber, as listed on their nutrition facts panel.[23]  As discussed above, researchers have found that even as much as 7.5 grams of agave inulin taken daily for three weeks is insufficient to confer any meaningful prebiotic benefits.[24]  As a consequence, a consumer would need to drink ***more than four* Poppi sodas daily *for 21 consecutive days*** before potentially noticing any meaningful and reliable "prebiotic" effects.[25]

24.     However, consumption at this rate would negate any prebiotic benefits.  First, consuming four or more Poppi sodas daily to gain prebiotic benefits has the potential to cause cramps, liver damage, and diarrhea.[26]  Second, and most critically, "[h]igh-sugar diets have been linked to higher levels of inflammation, especially for sugars like high-fructose corn syrup.  This inflammation can irritate the gut, damaging the protective mucus layer and decreasing the amount of good bacteria."[27]  And "[a]lthough organic cane sugar is less processed than table sugar, it still carried the same damaging effects that too much sugar has on your body and is not beneficial to your microbiome."[28]  Accordingly, to reach the 7.5-gram-fiber threshold, a consumer would also drink 20 grams of sugar daily for 21 days, or 420 grams of Defendant's cane sugar.  This means, even consuming enough Poppi sodas to see a beneficial prebiotic effect would require consuming enough sugar to offset those benefits.

25.     Plaintiff and Class Members would not have purchased the Products on the same terms had they known the truth about Poppi.

---

[23] By way of comparison, Olipop, the Defendant's main competitor, contains 2 grams of sugar and 9 grams of dietary fiber.

[24] *See supra*, ¶ 19-20, 22.

[25] *Id.*

[26] *See supra*, ¶ 19, 22.

[27] Jessica Bell, M.S., R.D., *The Worst Food for Gut Health, According to a Dietitian*, EATING WELL (Nov. 6, 2020) *available* https://www.eatingwell.com/article/7871982/worst-food-for-gut-health/ (last accessed May 17, 2024).

[28] B-Fine Foods, *5 Ingredients to Avoid (Or Your Gut May Go Crazy!)*, (Jan. 20, 2023), *available* https://b-finefoods.com/blogs/resources/5-hidden-ingredients-in-your-snacks-that-cause-gut-issues#:~:text=Although%20organic%20cane%20sugar%20is,t%20all%20that%20good%20ever (last accessed May 17, 2024).

26.     Nowhere on the Products packaging, labels, or advertisements does Defendant disclose the number of Poppi's that consumers would need to purchase before noticing any changes to their microbiome or the attendant risks of doing so.

27.     Moreover, because these facts relate to a critical safety-related deficiency in the Products, Defendant was under a continuous duty to disclose to Plaintiff and Class Members the true standard, quality, and grade of the Products and to disclose that the Products may contain substances known to have adverse health effects.  Defendant, as the manufacturer, or party to a contract to manufacture, thereby providing and approving marketing designs and the Products' formulations, and as the seller and advertiser of the Products, is best situated to know the content of its Products.  Nonetheless, Defendant concealed and affirmatively misrepresented the true nature of the Products, as discussed herein.

28.     Consumers lack the expertise to ascertain the true ingredients of an effective "prebiotic" prior to purchase.

29.     Absent careful scientific research regarding the health properties of agave inulin, and given Defendant's failure to disclose those risks, consumers such as Plaintiff and the Class Members were unable to determine that Poppi not only failed to provide "prebiotic" gut health benefits, but also posed digestive and liver issues while likely counteracting any prebiotic benefits because of its sugar content, when consumed regularly.

30.     Accordingly, reasonable consumers must, and do, rely on Defendant to accurately and honestly advertise the Products' benefits.  Further, consumers rely on Defendant to not contradict the Prebiotic Representations by including ingredients that could counteract its represented benefits and that which pose a risk to human health (*e.g.,* cane sugar and agave inulin). Such misrepresentations are material to reasonable consumers' purchasing decisions.

31.     Consumer reliance upon Defendant's representations and omissions was reasonable and foreseeable as Defendant's Prebiotics Representations, as advertised, are material to reasonable consumers.

32.     Accordingly, Plaintiff and Class Members suffered economic injuries as a result of purchasing the Product.

## CLASS ALLEGATIONS

33.     Plaintiff brings this action on behalf of herself and all other similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3) defined as (collectively, the "Classes"):

**Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products primarily for consumption. (the "Class").

**California Subclass:** All persons in California who, during the maximum period of time permitted by the law, purchased Defendant's Products primarily for consumption (the "California Subclass").

34.     The Classes do not include (1) Defendant, its officers, and/or its directors; (2) the Judge and/or Magistrate to whom this case is assigned; (3) the Judge or Magistrate's staff and family; and (4) Plaintiff's counsel and Defendant's counsel.

35.     Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

36.     ***Community of Interest***:  There is a well-defined community of interest among members of the Classes, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

37.     ***Numerosity***:  While the exact number of members of the Classes is unknown to Plaintiff at this time and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions.  The precise number of the members of the Classes and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

38.     ***Existence and predominance of common questions of law and fact***:  Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes.  These common legal and factual questions include, but are not limited to:

(a)    Whether Defendant's Prebiotic Representations are false and misleading;

(b)    Whether Defendant failed to disclose material facts about the Products;

(c)    Whether Defendant had a duty to disclose the risks associated with agave inulin;

(d)    Whether the Products posed a health risk;

(e)    Whether Defendant's representations and warranties were material;

(f)    Whether Defendant has been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon it by Plaintiff and the Class;

(g)    Whether Plaintiff and the Class sustained damages with respect to the common law claims asserted, and if so, the proper measure for their damages.

39.    With respect to the California Subclass, additional questions of law and fact common to the members include whether Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*., California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*

40.    ***Typicality***:  The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased Defendant's deceptive Products, and suffered a loss as a result of those purchases.

41.    ***Adequacy***:  Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4).  Plaintiff is an adequate representative of the Classes because she has no interests adverse to the interests of the members of the Classes.  Plaintiff is committed to the vigorous prosecution of this action, and, to that end, has retained skilled and experienced counsel.

42.    ***Superiority***:  A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because the expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek redress their claims other than through the procedure of a class action.  In addition, even if Class Members could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous

1   cases would proceed.  Individualized litigation would also present the potential for varying,

2   inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties

3   and to the court system, resulting in multiple trials of the same factual issues.  By contrast, the

4   maintenance of this action as a class action, with respect to some or all of the issues presented

5   herein, presented fewer management difficulties, conserves the resources of the parties and of the

6   court system and protects the rights of each member of the Classes.  Plaintiff anticipates no

7   difficulty in the management of this action as a class action.  Class-wide relief is essential to

8   compel compliance with California's consumer protection laws.  If separate actions were brought

9   by individual members of the Classes, Defendant could be subject to inconsistent obligations.

### CAUSES OF ACTION

### COUNT I
**Violation of California's False Advertising Law,**
**Cal. Bus. & Prof. Code § 17500, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

13   43.    Plaintiff incorporates by reference each of the allegations contained in the foregoing

14   paragraphs of this Complaint as though fully set forth herein.

15   44.    The FAL makes it "unlawful for any person … to make or disseminate or cause to

16   be made or disseminated before the public in this state, … [in] any advertising device … or in any

17   other manner or means whatever, including over the Internet, any statement, concerning …

18   personal property or those services, professional or otherwise, or … performance or disposition

19   thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable

20   care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

21   45.    Defendant committed acts of false and misleading advertising, as defined by the

22   FAL, by using the above referenced Prebiotic Representations to promote the sale of its Products

23   through online marketing and on the Products' packaging and labels.  Despite those

24   representations, however, the Products do not have any meaningful prebiotic effects on people's

25   guts.  Furthermore, Defendant omitted that consuming the Products poses a significant risk to the

26   health and well-being of Plaintiff and the California Subclass Members.

46.     The misrepresentations by Defendant and the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code § 17500, *et. seq.*

47.     Defendant knew or should have known that its advertising claims are misleading and/or false.

48.     Defendant knew or should have known, through the exercise of reasonable care, that its representations were false and misleading and likely to deceive consumers and cause them to purchase Defendant's Products.

49.     Defendant's wrongful conduct is ongoing and part of a general practice that is still being perpetuated and repeated throughout the State of California and nationwide.

50.     Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action will not succeed.  Plaintiff and the California Subclass may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiff may not be able to establish each California Subclass member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the FAL does not require individualized proof of deception or injury by absent class members.  In addition, Plaintiff and the California Subclass may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the FAL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith. Restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price, and an injunction requiring either (1) adequate disclosure of the risk of the agave inulin and cane sugar in the Products and its effects; or (2) the removal of Prebiotic Representations from the Products, will ensure that Plaintiff and the California Subclass Members are in the same place they would have been in had Defendant's

1     wrongful conduct not occurred, *i.e.*, the position to make an informed decision about the purchase

2     of the Products absent omissions and misrepresentations with the full purchase price at their

3     disposal.

## COUNT II
### Violation of California's Consumers Legal Remedies Act ("CLRA"),
### California Civil Code § 1750, *et seq.*
### (On Behalf of Plaintiff and the California Subclass)

51.     Plaintiff incorporates by reference each of the allegations contained in the foregoing

paragraphs of this Complaint as though fully set forth herein.

52.     Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have

sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not

have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she

does not have."

53.     Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a

particular standard, quality, or grade, or that goods are of a particular style or model, if they are of

another."

54.     Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to

sell them as advertised."

55.     Defendant profited from the sale of the falsely, deceptively, and unlawfully

advertised Products to unwary consumers.

56.     Defendant violated Civil Code §§ 1770(a)(5), (a)(7), and (a)(9) by affirmatively

representing that the Product has prebiotic gut health benefits when it does not.

57.     Defendant's wrongful business practices constituted, and still constitute, a

continuing course of conduct in violation of the CLRA.

58.     On May 28, 2024, prior to filing this action, Plaintiff sent a pre-suit notice letter

pursuant to CLRA § 1782.  The letter was sent certified mail, return receipt requested, and

provided notice of Defendant's violation of the CLRA and demands that Defendant correct the

unlawful, unfair, false and/or deceptive practices alleged herein.  If Defendant does not fully

correct the problem for Plaintiff and for each member of the Class and Subclass within 30 days

1    after service of Plaintiff's notice letter, Plaintiff and the California Subclass will amend the

2    complaint to seek all monetary relief allowed under the CLRA.

3         59.    Pursuant to California Civil Code §§ 1780(a)(1)-(5) and § 1780(e), Plaintiff and the

4    California Subclass seek injunctive relief, reasonable attorneys' fees and litigation costs, and any

5    other relief the Court deems proper under the CLRA.

**COUNT III**
**Violation of California's Unfair Competition Law, ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

9         60.    Plaintiff incorporates by reference each of the allegations contained in the foregoing

10   paragraphs of this Complaint as though fully set forth herein.

11        61.    The UCL prohibits unfair competition in the form of "any unlawful, unfair, or

12   fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any

13   act." Cal. Bus. & Prof. Code § 17200.  A business act or practice is "unlawful" if it violates any

14   established state or federal law.  A practice is unfair if it (1) offends public policy; (2) is immoral,

15   unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers.  The UCL

16   allows "a person who has suffered injury in fact and has lost money or property" to prosecute a

17   civil action for violation of the UCL.  Cal. Bus. & Prof. Code § 17204.  Such a person may bring

18   such an action on behalf of himself or herself and others similarly situated who are affected by the

19   unlawful and/or unfair business practice or act.

20        62.    Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent

21   business practices pursuant to California Business & Professions Code §§ 17200, *et seq*.

22        63.    Defendant has violated the UCL's proscription against engaging in **Unlawful**

23   **Business Practices** through its violations of the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.* and

24   CLRA, Cal. Civ. Code § 1770(a)(5) and (a)(7) as alleged above.

25        64.    Defendant has also violated the UCL's proscription against engaging in **Unfair**

26   **Business Practices**.  Defendant's acts, omissions, misrepresentations, practices and non-

27   disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning

28   of Business & Professions Code § 17200, *et seq.* in that Defendant's conduct is substantially

CLASS ACTION COMPLAINT—JURY TRIAL DEMANDED                                    17

injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  Defendant's deceptive Prebiotic Representations have misled consumers into purchasing the Products over other truthfully labeled competitors.  Furthermore, Defendant's omissions of fact regarding over consumption of agave inulin poses a significant risk to the health and well-being of Plaintiff and the California Subclass Members.

65.     There were reasonably available alternatives to further Defendant's legitimate business interests, such as removing the Prebiotic Representations, disclosing the health risks of over consumption of agave inulin and cane sugar, or changing the Products' ingredients.

66.     Defendant has further violated the UCL's proscription against engaging in **Fraudulent Business Practices.**  Defendant's Prebiotic Representations and omissions of fact, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200.

67.     Plaintiff and the other California Subclass members suffered a substantial injury by virtue of purchasing the Products as a result Defendant's unlawful, fraudulent, and unfair marketing, advertising, misrepresentations, and omissions about the true nature of the Products.

68.     There is no benefit to consumers or competition from Defendant's deceptive marketing and omitting material facts about the true nature of the Products.

69.     Plaintiff and the other California Subclass members had no way of reasonably knowing that the Products Prebiotic Representations were false or that consuming too many of them poses a health risk.  Thus, they could not have reasonably avoided the injury each of them suffered.

70.     The gravity of the consequences of Defendant's conduct as described outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, and is substantially injurious to Plaintiff and the other California Subclass members for the reasons set forth above.

71.     Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph as an alternative to any contrary allegations in her other causes of action, in the event that such causes of action will not succeed.  Plaintiff and the California Subclass may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiff may not be able to establish each California Subclass member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class members.  In addition, Plaintiff and the California Subclass may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the UCL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith. Restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price, and an injunction requiring either (1) adequate disclosure of the risk of the agave inulin in the Products and its effects; or (2) the removal of Prebiotic Representations from the Products, will ensure that Plaintiff and the California Subclass Members are in the same place they would have been in had Defendant's wrongful conduct not occurred, *i.e.*, the position to make an informed decision about the purchase of the Products absent omissions and misrepresentations with the full purchase price at their disposal.  Pursuant to California Business and Professional Code § 17203, Plaintiff and the California Subclass members seek an order of this Court that includes, but is not limited to, an order requiring Defendant to (a) provide restitution to Plaintiff and the other California Subclass members; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiff and the California Subclass members' attorneys' fees and costs.

1

2

**COUNT IV**
**Unjust Enrichment**
**(On Behalf Of The Class)**

3

4

72.    Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

5

6

73.    Plaintiff and the Class Members conferred benefits on Defendant by purchasing the Products.

7

8

9

10

11

12

74.    Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and the Class Members' purchases of the Products.  Retention of those monies under these circumstances is unjust and inequitable because Defendant misrepresented the benefits of the Products and failed to disclose their health risks.  These omissions and misrepresentations caused injuries to Plaintiff and the Class Members because they would not have purchased the Products if the true facts were known.

13

14

15

75.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the Class Members is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

16

17

18

19

20

21

22

23

24

25

26

27

76.    Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph as an alternative to any contrary allegations in her other causes of action, in the event that such causes of action will not succeed.  Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the element required under unjust enrichment.  In addition, Plaintiff and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because an action under unjust enrichment imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith.  Restitution may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price will ensure that Plaintiff and the Class are in the same place they would have been in had Defendant's

28

---

wrongful conduct not occurred, *i.e.*, the position to make an informed decision about the purchase of the Products absent omissions and misrepresentations with the full purchase price at their disposal.  As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class Members suffered injury and seek the disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits, plus interest, to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Classes; and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)     For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For injunctive relief as pleaded or as the Court may deem proper; and

(g)     For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: May 29, 2024                     Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:     */s/ L. Timothy Fisher*

L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700

E-mail: ltfisher@bursor.com
jglatt@bursor.com

**GUCOVSCHI ROZENSHTEYN, PLLC.**
Adrian Gucovschi (*pro hac vice* forthcoming)
Benjamin Rozenshteyn (*pro hac vice* forthcoming)
140 Broadway, Suite 4667
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com
E-Mail: ben@gr-firm.com

*Attorneys for Plaintiff*

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, L. Timothy Fisher declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Kristin Cobbs in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that Defendant regularly does business in San Francisco County, California, and a substantial portion of the events alleged in the Complaint, including the same misrepresentations, omissions, and injures alleged herein, have occurred in this County.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Walnut Creek, California, this 29th day of May 2024.

*/s/ L. Timothy Fisher*
L. Timothy Fisher
