1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
2
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
3
Walnut Creek, CA 94596
Telephone: (925) 300-4455
4
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
5
          jglatt@bursor.com

6

**GUTRIDE SAFIER LLP**
7
Seth A. Safier (State Bar No. 197427)
Marie A. McCrary (State Bar No. 262670)
8
Anthony J. Patek (State Bar No. 228964)
100 Pine Street, Suite 1250
9
San Francisco, CA 94111
E-mail: seth@gutridesafier.com
10
          marie@gutridesafier.com
          anthony@gutridesafier.com
11

12
*Co-Lead Interim Class Counsel*

13
*[additional counsel on signature page]*

14

15

**UNITED STATES DISTRICT COURT**
16
**NORTHERN DISTRICT OF CALIFORNIA**

17

18
| | |
|---|---|
| | Case No. 4:24-cv-03229-HSG |
| **In re VNGR BEVERAGE, LLC LITIGATION** | **NOTICE OF MOTION AND PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| | Date: May 8, 2025<br>Time:  2:00 p.m.<br>Courtroom:  2 – 4th Floor<br>Judge:  Hon. Haywood S. Gilliam, Jr. |

19

20

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 8, 2025, at 2:00 p.m., or as soon thereafter as counsel may be heard before the Honorable Haywood S. Gilliam, Jr., United States District Judge for the Northern District of California, at 1301 Clay Street, Oakland, California 94612, Plaintiffs Kristin Cobbs, Sarah Coleman, and Megan Wheeler, by and through Class Counsel, will move and hereby do move for Preliminary Approval of Class Action Settlement.

The Motion is made on the grounds that terms of the proposed Settlement are fair and reasonable, and that preliminary approval of the Settlement is therefore proper because the requirements of Fed. R. Civ. P. 23(e) have been met. Accordingly, Plaintiffs request that the Court enter the accompanying [Proposed] Order Granting Unopposed Motion for Preliminary Approval of Class Action Settlement; Provisionally Certifying The Class; And Directing Dissemination of Class Notice ("[Proposed] Preliminary Approval Order").

The Motion is based on the Declarations of L. Timothy Fisher of Bursor & Fisher, P.A., Marie A. McCrary of Gutride Safier LLP and Christie K. Reed of Verita Global LLC, and the exhibits attached hereto, including the Settlement Agreement; [Proposed] Preliminary Approval Order; Memorandum of Points and Authorities filed herewith; and additional evidence as presented.

Dated: March 14, 2025          **BURSOR & FISHER, P.A.**

By:    _/s/ L. Timothy Fisher_____

L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        jglatt@bursor.com

**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
Marie A. McCrary (State Bar No. 262670)
Anthony J. Patek (State Bar No. 228964)
100 Pine Street, Suite 1250

San Francisco, CA 94111
E-mail: seth@gutridesafier.com
          marie@gutridesafier.com
          anthony@gutridesafier.com

*Co-lead Interim Class Counsel*

**GUCOVSCHI ROZENSHTEYN, PLLC.**
Adrian Gucovschi (*pro hac vice*)
Benjamin Rozenshteyn (*pro hac vice*)
140 Broadway, Suite 4667
New York, NY 10005
Telephone: (212) 884-4230
Facsimile:  (212) 884-4230
E-mail: adrian@gr-firm.com
          ben@gr-firm.com

*Attorneys for Plaintiff Kristin Cobbs*

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (State Bar No. 206423)
Matthew B. George (State Bar No. 239322)
Blair E. Reed (State Bar No. 316791)
Clarissa R. Olivares (State Bar No. 343455)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: (415) 772-4700
Facsimile:  (415) 772-4709
E-mail: lking@kaplanfox.com
          mgeorge@kaplanfox.com
          breed@kaplanfox.com
          colivares@kaplanfox.com

*Attorneys for Plaintiff Wheeler*

# TABLE OF CONTENTS

**PAGE(S)**

I.     INTRODUCTION ....................................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ................................................. 2

III.   STANDARDS FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENTS .......................................................................................................... 3

IV.   BENEFITS CONFERRED UNDER THE TERMS OF THE PROPOSED
SETTLEMENT ........................................................................................................... 5

    A.    Class Definition ............................................................................................... 5

    B.    Monetary Relief for Class Members ............................................................... 5

    C.    Released Claims ............................................................................................... 6

    D.    Remaining Settlement Fund Allocation .......................................................... 6

          1.    Administrative and Notice Costs ......................................................... 6

          2.    Service Award ...................................................................................... 6

          3.    Attorneys' Fees and Costs ................................................................... 7

          4.    *Cy Pres* Award .................................................................................. 7

    E.    Settlement Administration ................................................................................ 7

V.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL
BECAUSE THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE,
AND REASONABLE ................................................................................................. 8

    A.    The *Hanlon* Factors ...................................................................................... 9

          1.    The Strength of Plaintiffs' Case .......................................................... 9

          2.    Risk of Continuing Litigation ............................................................ 10

          3.    Risk of Maintaining Class Action Status ........................................... 10

          4.    Amount Offered In Settlement ........................................................... 11

          5.    The Extent of Discovery ..................................................................... 13

          6.    Experience and Views of Counsel ...................................................... 13

    B.    The Rule 23(e)(2) Factors .............................................................................. 14

          1.    The Class Representatives and Class Counsel Have
Adequately Represented the Class (Fed. R. Civ. P.
23(e)(2)(A)) ....................................................................................... 14

2.    The Settlement Was Negotiated At Arm's Length.......................................14

3.    The Settlement Provides Adequate Relief to the Class................................15

4.    The Settlement Treats All Class Members Equally .....................................16

VI.    CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS
APPROPRIATE ...................................................................................................17

A.    The Class Satisfies Rule 23(a)................................................................17

1.    Numerosity .................................................................................17

2.    Commonality ..............................................................................17

3.    Typicality....................................................................................18

4.    Adequacy ....................................................................................19

B.    The Class Satisfies Rule 23(b)(3)...........................................................20

1.    Common Questions Predominate ...............................................21

2.    A Class Action Is a Superior Mechanism...................................21

VII.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL....................21

VIII.    THE SETTLEMENT ADMINISTRATOR SHOULD BE APPROVED ...........................22

IX.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED .....................................22

A.    The Contents of the Proposed Class Notice Complies With Rule
23(c)(2)...................................................................................................22

B.    Distribution Of The Class Notice Will Comply With Rule 23(c)(2) .......23

X.    THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE.................................24

XI.    CONCLUSION ....................................................................................................24

1

## TABLE OF AUTHORITIES

2

**PAGE(S)**

3

**CASES**

4

*Allen v. Bedolla,*
  787 F.3d 1218 (9th Cir. 2015) ............................................................................................ 3

5

6

*Alvarez v. Sirius XM Radio Inc.,*
  2020 WL 7314793 (C.D. Cal. July 15, 2020) ........................................................... 15, 16, 18

7

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ............................................................................................................ 20

8

9

*Boyd v. Bechtel Corp.,*
  485 F. Supp. 610 (N.D. Cal. 1979) ....................................................................................... 13

10

11

*Briseno v. ConAgra Foods, Inc.,*
  844 F. 3d 1121 (9th Cir. 2017) ............................................................................................ 12

12

*Carlotti v. ASUS Computer Int'l,*
  2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ....................................................................... 5

13

14

*Carter v. XPO Logistics, Inc.,*
  2019 WL 5295125 (N.D. Cal. Oct. 18, 2019) ......................................................................... 8

15

16

*Change v. Wells Fargo Bank, N.A.,*
  2023 WL 6961555 (N.D. Cal. Oct. 19, 2023) ......................................................................... 6

17

*Chavez v. Blue Sky Natural Beverage Co.,*
  268 F.R.D. 365 (N.D. Cal. 2010) ......................................................................................... 18

18

19

*Chess v. Volkswagen Grp. of Am. Inc.,*
  2022 WL 4133300 (N.D. Cal. Sept. 12, 2022) ....................................................................... 7

20

*Churchill Vill., L.L.C. v. Gen. Elec.,*
  361 F. 3d 566 (9th Cir. 2004) ............................................................................................... 8

21

22

*Dalchau v. Fastaff, LLC,*
  2018 WL 1709925 (N.D. Cal. Apr. 9, 2018) ........................................................................ 18

23

24

*Ebin v. Kangadis Food Inc.,*
  297 F.R.D. 561 (S.D.N.Y. 2014) ......................................................................................... 20

25

*Ferrell v. Buckingham Prop. Mgmt.,*
  2021 WL 488314 (E.D. Cal. Feb. 10, 2021) ........................................................................... 3

26

27

*Garner v. State Farm. Mut. Auto. Ins. Co.,*
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ..................................................................... 9, 14

28

*Gen. Tel. Co. of the Southwest v. Falcon*,
   457 U.S. 147 (1982) ............................................................................................ 19

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................ 4, 8, 18, 21

*In re Apple Inc. Securities Litig.*,
   2024 WL 3297079 (N.D. Cal. June 3, 2024) ............................................... 10

*In re Lyft Derivative Litig.*,
   2024 WL 4505474 (N.D. Cal. Oct. 16, 2024) ............................................. 6

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F. 3d 454 (9th Cir. 2000) ........................................................... 3, 13

*In re Netflix Privacy Litig.*,
   2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................................ 11

*In re Pac. Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ..................................................................... 14

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ............................................................ 3, 4

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................. 4, 16

*Johnson v. Triple Leaf Tea Inc.*,
   2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ........................................... 11

*Knapp v. Art.com, Inc.*,
   283 F. Supp. 3d 823 (N.D. Cal. 2017) ..................................................... 11

*Krommenhock v. Post Foods, LLC*,
   334 F.R.D. 552 (N.D. Cal. 2020) ............................................................ 17

*Larsen v. Trader Joe's Co.*,
   2014 WL 3404531 (N.D. Cal. July 11, 2014) ........................................... 10

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ................................................................ 11

*Lipuma v. Amer. Express Co.*,
   406 F. Supp. 2d 1298 (S.D. Fla. 2005) .................................................... 10

*Low v. Trump Univ., LLC*,
   246 F. Supp. 3d 1295 (S.D. Cal. 2017) ................................................... 13

*Martinelli v. Johnson & Johnson*,
   2022 WL 4123874 (E.D. Cal. Sept. 9, 2022) .......................................... 17

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ................................................................ 10

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F. 2d 615 (9th Cir. 1982) ............................................................... 4, 9

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) .............................................................................. 20

*Pena v. Taylor Farms Pac., Inc.*,
  2021 WL 916257 (E.D. Cal. Mar. 10, 2021) ........................................... 8

*Perks v. Activehours, Inc.*,
  2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ............................... 15, 16, 17

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
  390 U.S. 414 (1968) ............................................................................... 4

*Ramirez v. TransUnion LLC*,
  951 F.3d 1008 (9th Cir. 2020) ............................................................... 19

*Ries v. Ariz. Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ........................................................... 18

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ........................................................... passim

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ................................................................ 19

*Villegas v. J.P. Morgan Chase & Co.*,
  2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ......................................... 14

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .......................................................................... 18, 20

*Williams v. MGM-Pathe Communications Corp.*,
  129 F.3d 1026 (9th Cir. 1997) ................................................................. 7

*Wong v. Arlo Techs., Inc.*,
  2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ........................................... 7

*Zinser v. Accufix Research Inst., Inc.*,
  253 F. 3d 1180 (9th Cir. 2001) .............................................................. 20

**STATUTES**

28 U.S.C. § 1715 .................................................................................. 23

Cal. Bus. & Prof. Code § 17200 ............................................................. 1

Cal. Bus. & Prof. Code § 17500 ............................................................................................. 1

Cal. Civ. Code § 1750 ............................................................................................................ 1

**RULES**

Fed. R. Civ. P. 23 ........................................................................................................... passim

Fed. R. Civ. P. 23(a) ...................................................................................................... passim

Fed. R. Civ. P. 23(b) ...................................................................................................... passim

Fed. R. Civ. P. 23(c) ......................................................................................................... 22, 23

Fed. R. Civ. P. 23(e) ...................................................................................................... passim

Fed. R. Civ. P. 23(f) ............................................................................................................. 11

Fed. R. Civ. P. 23(g) ........................................................................................................ 21, 22

**OTHER AUTHORITIES**

*Newberg on Class Actions*, § 11.27 (4th ed. 2002) ........................................................... 17

*Newberg on Class Actions*, § 11.28 (4th ed. 2002) ........................................................... 19

I.    **INTRODUCTION**

Plaintiffs[1] Kristin Cobbs, Sarah Coleman, and Megan Wheeler ("Plaintiffs"), by and through their Co-Lead Interim Class Counsel,[2] respectfully submit this memorandum in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.  In this putative class action, Plaintiffs allege that Defendant VNGR Beverage Inc., d/b/a Poppi ("Defendant" or "Poppi") (Plaintiffs and Defendant together shall be referred to as the "Parties"), improperly advertised and labeled its Poppi prebiotic soda as capable of providing prebiotic gut health benefits (the "Gut Health Claims").  Accordingly, Plaintiffs brought claims against Defendant for violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, common law fraud, unjust enrichment, and breach of express and implied warranties.[3]

On December 4, 2024, the Parties engaged in an all-day mediation with Judge Jay C. Gandhi (Ret.) of JAMS, and in the weeks that followed, were able to reach a resolution.  If approved, this class action settlement will deliver substantial monetary relief to putative Class Members and will resolve Plaintiffs' and the putative class's claims against Defendant.  The Settlement Agreement (the "Settlement Agreement") and its exhibits are submitted as Exhibit 1 to the contemporaneously filed Declaration of L. Timothy Fisher (the "Fisher Decl.").  The Settlement establishes a non-reversionary total Settlement Fund in the amount of $8,900,000, which will be used to pay all approved claims by Class Members, notice and administrative expenses, Court-approved service awards to Plaintiffs, and attorneys' fees to proposed Class Counsel to the extent awarded by the Court.

---

[1] Plaintiff Carol Lesh passed away prior to the execution of the Settlement Agreement.

[2] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the Settlement Agreement.  *See* Fisher Decl. Ex. 1.

[3] Pursuant to § 2.3 of the Settlement Agreement, Plaintiffs filed a Third Amended Complaint adding a breach of implied warranty claim, which is now the operative pleading.  *See* Fisher Decl. Ex. 1 and ECF No. 54.

Defendant does not oppose this Motion.  Given the exceptional relief secured on behalf of the Class, the Court should have no hesitation finding that the Settlement is fair and reasonable and warrants preliminary approval.  Accordingly, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the proposed Settlement; (2) conditionally certify the settlement Class under Fed. R. Civ. P. 23(b)(3); (3) appoint L. Timothy Fisher of Bursor & Fisher, P.A., and Marie McCrary of Gutride Safier LLP as Class Counsel; (4) appoint Plaintiffs Kristin Cobbs, Sarah Coleman, and Megan Wheeler as Class Representatives for the Class; (5) appoint Verita Global, LLC as the Settlement Administrator and order payment of the initial deposit for the estimated Administrative and Notice Costs; (6) approve the Notice Plan described in the Settlement and the forms of the Email Notice, Publication Notice, and Website Notice to Class Members and direct its distribution; (7) mandate procedures and deadlines for exclusion requests and objections; and (8) schedule a hearing for final approval.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On May 29, 2024, Plaintiff Cobbs brought claims against Defendant for violations of the CLRA, UCL, FAL, and unjust enrichment.  Plaintiff Cobbs claimed that Defendant's gut health claims were false and misleading because the Products did not contain enough prebiotic to cause any meaningful gut health benefits.  ECF No. 1.  On June 14, Plaintiffs Lesh and Coleman filed a substantially similar Complaint.  *Lesh, et al. v. VNGR Beverage LLC*, Case No. 24-cv-03612-SK.  The *Lesh* action was consolidated into the *Cobbs* action and captioned *In re VNGR Beverage LLC Litigation.*  The *Lesh* and *Cobbs* Plaintiffs filed a consolidated amended complaint.  *In re VNGR Beverage LLC Litigation*, 4:24-cv-03229-HSG, ECF No. 22.  On July 19, 2024, Plaintiff Wheeler filed a Complaint asserting identical claims.  *Wheeler v. VNGR Beverage LLC*, Case No. 3:24-cv-04396-LB.  On August 21, 2024, the *Wheeler* action was consolidated into the *In re VNGR Beverage LLC Litigation* case, and Bursor & Fisher P.A. and Gutride Safier LLP were named Co-Lead Interim Class Counsel.  ECF No. 36.

Plaintiffs filed a Second Consolidated Amended Class Action Complaint on August 20, 2024, adding breach of express warranty and common law fraud claims.  ECF No. 35.  Defendant filed a Motion to Dismiss ("Motion") on September 23, 2024.  ECF No. 37.  That same day,

1   Vanessa Jackson filed a substantially similar Complaint. *Jackson v. VNGR Beverage LLC*, Case

2   No. 3:24-cv-6666. On October 11, 2024, the *Jackson* action was related to the *In re VNGR*

3   *Beverage LLC Litigation* case. On October 15, 2024, the Court extended Defendant's deadline to

4   respond to the *Jackson* action until forty-five days after Defendant's Motion is decided. Plaintiffs

5   filed their opposition to the Motion on October 21, 2024 (ECF No. 43) and Defendant filed its

6   Reply on November 12, 2024. ECF No. 45. The Court vacated the hearing on Defendant's Motion

7   and took it under submission. ECF No. 47.

8        On December 4, 2024, Plaintiffs and Defendant attended a private mediation with the

9   Honorable Judge Jay C. Gandhi (Ret.) of JAMS. The Parties were unable to reach resolution at the

10   mediation but continued to work toward settlement thereafter. The Parties came to an agreement in

11   principle and on December 16, 2024, the Parties stipulated to stay the proceedings for 60 days—

12   which the Court granted—to draft the Settlement Agreement and exhibits. ECF Nos. 49-50. On

13   March 6, 2025, pursuant to the Settlement Agreement, Plaintiffs filed a Consolidated Third

14   Amended Complaint to add a breach of implied warranty claim. ECF No. 54.

15   **III.   STANDARDS FOR PRELIMINARY APPROVAL OF CLASS ACTION**
16   **SETTLEMENTS**

17        The law favors compromise and settlement of class actions. *See Ferrell v. Buckingham*

18   *Prop. Mgmt.*, 2021 WL 488314, at *3 (E.D. Cal. Feb. 10, 2021) (slip op.) ("The Ninth Circuit has

19   repeatedly affirmed that a strong judicial policy favors settlement of class actions.") (citing *Allen v.*

20   *Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)). A decision "to approve or reject a settlement is

21   committed to the sound discretion of the trial judge because he is exposed to the litigants, and their

22   strategies, positions, and proof." *In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 458 (9th Cir.

23   2000).

24        Approval of class action settlements involves a two-step process. First, the Court must

25   make a preliminary determination whether the proposed settlement appears to be fair and is "within

26   the range of possible approval." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).

27   If so, notice can be sent to Class Members and the Court can schedule a final approval hearing

28

1   when a more in-depth review of the settlement terms will take place.  *See Manual for Complex*

2   *Litig.*, § 21.312 at 293-96 (4th ed. 2004).

3          The purpose of a preliminary approval hearing is to ascertain whether putative class

4   members should be notified of the proposed settlement and to proceed with a fairness hearing.  *See*

5   *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  Notice should be

6   disseminated where "the proposed settlement appears to be the product of serious, informed,

7   non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

8   treatment to class representatives or segments of the class, and falls within *the range of possible*

9   *approval*."  *Id.* (emphasis added) (internal quotation marks omitted) (quoting *Manual for Complex*

10  *Litig.*, Second § 30.44 (1985)).  Preliminary approval does not require an answer to the ultimate

11  question of whether the proposed settlement is fair and adequate, because that determination occurs

12  only after notice of the settlement has been given to the members of the settlement class.  *See id.*

13  Nevertheless, a review of the standards applied in determining whether a settlement should be

14  given *final* approval is helpful to the determination of preliminary approval.  One such standard is

15  the strong judicial policy of encouraging compromises, particularly in class actions.  *See In re*

16  *Syncor*, 516 F.3d at 1101 (relying on *Officers for Justice v. Civil Serv. Comm'n*, 688 F. 2d 615 (9th

17  Cir. 1982), *cert. denied,* 459 U.S. 1217 (1983)).  While the Court has discretion regarding the

18  approval of a proposed settlement, it should give "proper deference to the private consensual

19  decision of the parties."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  The

20  Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-collusive,

21  negotiated resolution" in approving a class action settlement.  *Rodriguez v. West Publ'g Corp.*, 563

22  F.3d 948, 965 (9th Cir. 2009).

23         Beyond the public policy favoring settlements, the principal consideration in evaluating the

24  fairness and adequacy of a proposed settlement is the likelihood of recovery balanced against the

25  benefits of settlement.  "[B]asic to this process in every instance, of course, is the need to compare

26  the terms of the compromise with the likely rewards of litigation."  *Protective Committee for*

27  *Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).

28  Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable and

adequate. *Carlotti v. ASUS Computer Int'l*, 2019 WL 6134910, at *3 (N.D. Cal. Nov. 19, 2019).

## IV.    BENEFITS CONFERRED UNDER THE TERMS OF THE PROPOSED SETTLEMENT

The key terms of the Settlement Agreement are briefly summarized as follows:

### A.    Class Definition

The Settlement resolves claims between Defendant and the proposed Class consisting of "all persons in the United States who, between January 23, 2020 and the Settlement Notice Date, purchased in the United States, for household use and not for resale or distribution, one or more of the Products." Fisher Decl. Ex. 1 § Definitions, I. The "Products" means "all flavors and package sizes of Poppi's beverages sold between January 23, 2020 and the Settlement Notice Date." *Id.* § JJ. This Class definition encompasses the proposed Nationwide and California Subclass as defined in the Third Amended Consolidated Complaint. *See* ECF No. 54 ¶ 89.

### B.    Monetary Relief for Class Members

Defendant agreed to pay a Gross Settlement Amount of $8,900,000. Fisher Decl. Ex. 1 § 1.1. This amount will be paid into a non-reversionary Settlement Fund that will be used to pay Administrative and Notice Costs, Class Payments for Approved Claims to Claimants, a Service Award to Plaintiffs, and Attorneys' Fees and Costs. *Id.* §§ 1.1, 1.3.

The Settlement Agreement provides that Claimants are "entitled to a Class Payment of seventy-five cents ($0.75) per each Single Can Unit of the Products purchased, three dollars ($3.00) per 4-pack Unit of the Products purchased, six dollars ($6.00) per 8-pack Unit of the Products purchased, nine dollars ($9.00) per 12-pack or 15-pack Unit of the Products purchased." *Id.* § 6.1.5. Additionally, "the minimum Class Payment for any Approved Claim shall be five dollars ($5.00) per Household,[4] even if the Class Member purchased fewer units, subject to the availability of funds remaining in the Settlement Fund." Fisher Decl. Ex. 1, § Definitions, Y. A Claimant without Proof of Purchase can receive a maximum Class Payment of sixteen dollars ($16.00) per Household. *Id.* § 6.1.5(b). There is no maximum for Claims that submit Proof of

---

[4] A Household may not submit more than one claim form. *Id.* § 6.1.6.

Purchase.  These amounts are subject to a pro rata upward or downward adjustment based on the amount of funds available in the Net Settlement Fund for distribution to Class Members.  *Id.* § 6.4.

## C.    Released Claims

The "Released Claims" are "any and all claims, demands, actions, causes of action, lawsuits, arbitrations, damages, liabilities, or penalties, whether federal or state, known or unknown, asserted or unasserted, regardless of legal theory, legal, equitable, or otherwise, that were or could have been asserted in the Consolidated Action or that arise out of or relate to the labeling, advertising, or formulation of the Products between January 23, 2020 and the Settlement Notice Date.  The Released Claims shall not release any Class Member's rights to enforce this Agreement.  The Released Claims "shall not release any Class Member's personal injury claims. Fisher Decl. Ex. 1, § Definitions, LL.  The Released Claims match the broad scope of the consumer protection claims that Plaintiffs brought in their operative Complaint.  *See* ECF No. 54.[5]  "Since the language of the Settlement Agreement's release is appropriately tied to the claims raised in the operative complaint, the scope of release weighs in favor of granting preliminary approval."  *In re Lyft Derivative Litig.*, 2024 WL 4505474, at *6 (N.D. Cal. Oct. 16, 2024) (Gilliam, Jr., J.).

## D.    Remaining Settlement Fund Allocation

### 1.    Administrative and Notice Costs

All costs of notice and administration of the Settlement (the "Administrative and Notice Costs") will be paid from the Settlement Fund.  *See* Fisher Decl. Ex. 1, § 7.5.

### 2.    Service Award

Plaintiffs will request payment of Service Awards from the Settlement Fund of $5,000 each.  *See* Fisher Decl. Ex. 1, § 8.2.  "Service awards are designed to 'compensate class representatives for work done on behalf of the class, [and] to make up for financial or reputation risk undertaken in bringing the action[.]'"  *Change v. Wells Fargo Bank, N.A.*, 2023 WL 6961555, at *9 (N.D. Cal. Oct. 19, 2023) (Gilliam, Jr., J.) (quoting *Rodriquez v. West Pub. Corp.*, 563 F. 3d

---

[5] The Released Claims subsume the later-filed *Jackson v. VNGR Beverage LLC* action (the "Jackson Action"), which has been stayed until resolution in this matter.  *See Jackson*, 4:24-cv-06666-HSG, ECF No. 21.

948, 958 (9th Cir. 2009). "'Service awards as high as $5,000 are presumptively reasonable in this judicial district.'" *Chess v. Volkswagen Grp. of Am. Inc.*, 2022 WL 4133300, at *10 (N.D. Cal. Sept. 12, 2022) (Gilliam, Jr., J.) (quoting *Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *12 (N.D. Cal. Apr. 19, 2021)).

### 3.    Attorneys' Fees and Costs

Plaintiffs will request payment of their out-of-pocket expenses (which Class Counsel estimates is not more than $30,000) plus attorneys' fees of up to 30% of the Gross Settlement Amount. *See* Declaration of Marie A. McCrary ("McCrary Decl."), ¶ 21; Fisher Decl. Ex. 1, § 8.1. This request reflects standard awards in other common fund settlements, under which fees are awarded as percentage of the fund, as set out in *Williams v. MGM-Pathe Communications Corp.*, 129 F.3d 1026 (9th Cir. 1997). The reasonableness of this request is discussed in Section V.A.4, *infra*. Plaintiffs' Counsel has a total lodestar of approximately 600,000 dollars as of preliminary approval. Fisher Decl. ¶ 23-24. Plaintiffs' Counsel estimates incurring significant additional time communicating with class members pre-and-post approval, supervising settlement administration, overseeing dissemination of notice, moving for final approval of settlement, and post-approval management and administration of settlement and disbursement of funds to Class Members. All in, Plaintiffs' Counsel anticipates a lodestar multiplier of between 1.5-3.5.

### 4.    *Cy Pres* Award

The Parties have designated Feeding America as the *cy pres* recipient. Fisher Decl. Ex. 1 § 1.6. Feeding America is a non-profit organization that provides free meals, nutrition education, and advocates for access to food and nutrition assistance programs. Fisher Decl. ¶ 25. Bursor & Fisher, P.A. has previously named Feeding America as a *cy pres* recipient. *See In re Trader Joe's Tuna Litig.*, 2:26-cv-01371-ODW-AJW (C.D. Cal. 2020), ECF No. 116.

### E.    Settlement Administration

Class Counsel received and reviewed four bids from potential settlement administrators and compared them based on the provided price quotes, estimated claims, previous experience with those administrators, notice plans, and fraud detection programs. Fisher Decl. ¶ 30-31, McCrary Decl. ¶ 26. The parties selected Verita Global, LLC ("Verita") to serve as the Settlement

1    Administrator. *Id.* § Definitions, QQ. In the last two years, Verita has served as the Settlement

2    Administrator for Bursor & Fisher in seven previous class actions. Gutride Safier LLP has also

3    worked with Verita once in the previous two years. Declaration of Christie K. Reed ("Reed

4    Decl."), ¶ 8.

5         Plaintiffs anticipate a claims rate of between 2-5%. *Id.* ¶ 33. This estimate is based on

6    claims rates in similar consumer class action settlements that Verita has administered, including *In*

7    *re Morning Song Bird Food Litig.*, Case No. 3:12-cv-01592 (S.D. Cal), *Cicciarella v. Califia*

8    *Farms, LLC*, Case No. 7:19-cv-08785 (S.D.N.Y.), and *In re Trader Joe's Tuna Litig.*, Case No.

9    2:16-cv-01371 (C.D. Cal.). Reed Decl. ¶ 34.

10   **V.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL BECAUSE THE**
           **PROPOSED SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE**

11
12        Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement]

13   only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P.

14   23(e)(2). When making this determination, the Ninth Circuit has instructed district courts to

15   balance several factors: (1) "the strength of the plaintiff's case;" (2) "the risk, expense,

16   complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status

17   throughout the trial;" (4) "the amount offered in settlement;" and (5) "the extent of discovery

18   completed and the stage of the proceedings."[6] *Hanlon*, 150 F.3d at 1026; *see also Churchill Vill.,*

19   *L.L.C. v. Gen. Elec.*, 361 F. 3d 566 (9th Cir. 2004) (same); *Pena v. Taylor Farms Pac., Inc.*, 2021

20   WL 916257, at *3 (E.D. Cal. Mar. 10, 2021) (same); *Carter v. XPO Logistics, Inc.*, 2019 WL

21   5295125, at *2 (N.D. Cal. Oct. 18, 2019) (same).

22        In addition to these factors, courts should also consider the four enumerated factors in

23   Federal Rule of Civil Procedure Rule 23(e)(2), which include whether: (A) the class representatives

24   and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's

25   length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and

26   delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the

27   _____
     [6] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class
28   members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. This consideration is more
     germane to final approval and will be addressed at that time.

class, including the method of processing class-member claims, (iii) the terms of any proposed

award of attorneys' fees, including timing of payment, and (iv) any agreement required to be

identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each

other. Fed. R. Civ. P. 23(e)(2). There is significant overlap between the *Hanlon* and Rule 23(e)(2)

and factors, which complement, rather than displace each other.

### A. The *Hanlon* Factors

#### 1. The Strength of Plaintiffs' Case

In determining the likelihood of a plaintiff's success on the merits of a class action, "the

district court's determination is nothing more than an amalgam of delicate balancing, gross

approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotation marks

omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator

arrived at a reasonable range of settlement by considering Plaintiff[s'] likelihood of recovery."

*Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010)

(citing *Rodriguez*, 563 F.3d at 965).

Here, Class Counsel became thoroughly familiar with the applicable facts, legal theories,

and defenses on both sides before engaging in arms-length negotiations with Defendant's counsel.

McCrary Decl. ¶¶ 5-13, 17. Although Plaintiffs and Class Counsel had confidence in their claims,

they recognize that a favorable outcome was not assured and that they would face risks on

Defendant's pending motion to dismiss, and, if Plaintiffs' claims survived, at class certification,

summary judgment, and ultimately trial. *Id.* ¶¶ 16-19, 22-25. Defendant vigorously denies

Plaintiffs' allegations and asserts that neither Plaintiffs nor the Class suffered any harm or

damages. In addition, Defendant would no doubt present a vigorous defense at trial, and there is no

assurance that the Class would prevail—or even if they did, that they would be able to obtain an

award of damages significantly more than achieved here absent such risks. The Settlement

abrogates these risks to Plaintiffs and the Class. *See Rodriguez*, 563 F.3d at 965-66 ("[O]ne factor

'that may bear on review of a settlement' is 'the advantages of the proposed settlement versus the

probable outcome of a trial on the merits of liability and damages as to the claims, issues, or

1    defenses of the class and individual class members[.]'") (citing Federal Judicial Center, Manual for

2    Complex Litig. § 21.62, at 316 (4th ed. 2004)).  Moreover, even if Plaintiffs prevailed at trial, any

3    recovery could be delayed for years by an appeal.  McCrary Decl. ¶ 23.  Thus, even in the best

4    case, it could take years to secure any meaningful relief for Class Members.  *See Lipuma v. Amer.*

5    *Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings

6    could delay class recovery "strongly favor[s]" approval of a settlement).  Thus, Class Counsel

7    believes that the proposed Settlement provides the Class with an outstanding opportunity to obtain

8    significant relief at this stage in the litigation.

9               **2.    Risk of Continuing Litigation**

10            Next, approval of the proposed settlement is appropriate given the risks associated with

11    continued litigation.  By reaching a favorable settlement now, Plaintiffs seek to avoid significant

12    expense and delay while ensuring recovery for the Class.  "Generally, 'unless the settlement is

13    clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation

14    with uncertain results.'"  *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11,

15    2014) (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526

16    (C.D. Cal. 2004)) (internal quotation marks omitted).  "Moreover, settlement is favored where, as

17    here, significant procedural hurdles remain, including class certification[.]"  *Id.* (citing *Rodriguez*,

18    563 F.3d at 966).

19            Here, Defendant's Motion to Dismiss is pending, which seeks disposal of the entire case.

20    Given the early nature of case, "[f]urther litigation, absent settlement would likely be lengthy and

21    would present several difficulties to resolve."  *In re Apple Inc. Securities Litig.*, 2024 WL 3297079,

22    at *3 (N.D. Cal. June 3, 2024).  Only limited informal discovery has taken place during mediation

23    and Plaintiffs face significant hurdles to get the proposed classes certified and prevail at trial.

24             **3.    Risk of Maintaining Class Action Status**

25            In addition to the risks of continuing the litigation, Plaintiffs also face risks in certifying a

26    class and maintaining class status through trial.  The Court has not yet certified the proposed

27    classes which could only occur after a favorable decision on Defendant's Motion to Dismiss,

28    discovery is completed, and exhaustive class certification briefing.  Moreover, even assuming that

1    the Court were to grant a motion for class certification, the class could still be decertified at any

2    time. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The

3    notion that a district court could decertify a class at any time is one that weighs in favor of

4    settlement.") (internal citations omitted). Additionally, should the Court certify the class,

5    Defendant may appeal the Court's decision through a Rule 23(f) petition and subsequently move to

6    decertify, forcing additional rounds of briefing. Risk, expense, and delay permeate such a process.

7    "[C]onsummating this Settlement promptly in order to provide effective relief to Plaintiff[s] and

8    the Class" eliminates these risks by ensuring Class Members a recovery that is certain and

9    immediate. *Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015).

10   The Settlement eliminates these risks, expenses, and delay.

### 4.    Amount Offered In Settlement

12       The determination of "the fairness, adequacy, and reasonableness of the amount offered in

13   settlement is not a matter of applying a 'particular formula.'" *Knapp v. Art.com, Inc.*, 283 F. Supp.

14   3d 823, 832 (N.D. Cal. 2017) (citing *Rodriguez,* 563 F.3d at 965). Instead, the Court's analysis of

15   whether a settlement amount is reasonable is "an amalgam of delicate balancing, gross

16   approximations, and rough justice." *Id.* Because a settlement provides certain and immediate

17   recovery, courts often approve settlements even where the benefits obtained as a result of the

18   settlement are less than those originally sought. Indeed, "it is well-settled law that a proposed

19   settlement may be acceptable even though it amounts to only a fraction of the potential recovery

20   that might be available to the class members at trial." *Id.* (citing *Linney v. Cellular Alaska P'ship*,

21   151 F.3d 1234, 1242 (9th Cir. 1998)). Here, the total monetary value of the Class Settlement

22   represents an outstanding recovery for the Class.

23       A comparison of the Settlement award to the potential damages that might be recovered for

24   the Class at trial, given the risks of the litigation, supports the reasonableness of the Settlement.

25   *See* N.D. Cal. Guide ¶1(d) (preliminary approval motion should set forth "potential recovery if

26   plaintiffs were to prevail" and "likely recovery per plaintiff" under the settlement). Based upon

27   Plaintiffs' Counsel's experience in comparable litigation, the price premium associated with the gut

28   health claims is likely between five and ten percent (5-10%). Fisher Decl. ¶ 19. Single cans of the

Product sell at retail for upward of $2.50. Thus, if Plaintiffs recovered the entire amount of monetary damages under the price premium model, the maximum potential recovery available to Class Members per can would be approximately $0.13 - $0.25. Even after trial, Defendant may successfully argue that Class Members were not entitled to monetary compensation for their purchases. *See Briseno v. ConAgra Foods, Inc.*, 844 F. 3d 1121, 1131-32 (9th Cir. 2017) ("Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability."). Under this Settlement, a Class Member with an Approved Claim is entitled to a Class Payment of seventy-five cents ($0.75) per each Single Can Unit purchased, three dollars ($3.00) per 4-pack Unit purchased, six dollars ($6.00) per 8-pack Unit purchased and nine dollars ($9.00) per 12-pack or 15-pack unit purchased. Fisher Decl. Ex. 1 § 6.1.5. These amounts constitute a significant percentage of the Products' total cost. In addition, each Claimant is entitled to the Minimum Payment of five dollars ($5.00) and there is no maximum limit on the recovery Claimants may receive with Proof of Purchase. *Id.* § Y. And, although the $8.9 million Gross Settlement Amount may be less than the maximum amount Plaintiffs could potentially recover if fully successful at trial, it is reasonable in light of the risks of proceeding to trial. Given that Defendant moved to dismiss all of Plaintiffs' claims, this Settlement is outstanding as Defendant could have prevailed on the motion to dismiss, narrowed the scope of the Products at issue, the breadth of the Class, and/or the claims. Indeed, this Settlement provides an exceptional result compared with similar mislabeling beverages cases. *See*, *e.g.*, *Andrade-Heymsfield v. NextFoods, Inc.*, Case No. 3:21-cv-01446-BTM-MSB, ECF Nos. 53, 55, 56 (S.D. Cal. 2023) (granting preliminary approval of $1.25 million non-reversionary common fund where plaintiff claims defendant's fruit juices made false health claims).

Moreover, even if Plaintiffs won at trial, Class Members would still need to file claims to receive compensation as the Products are sold at retail and Defendant does not have records of all individual purchasers. The recovery per purchase would also likely be lower. The Settlement is a very favorable outcome given the substantial risks of continuing with this complex litigation, and the uncertainty of trial, the advantages of obtaining an immediate benefit for Class Members, and avoiding substantial expenses of further litigation.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 5. The Extent of Discovery

Under this factor, courts evaluate whether Class Counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Plaintiffs, by and through their counsel, have conducted extensive research and investigation into the gut health claims at the heart of Plaintiffs' claims. McCrary Decl. ¶ 5. Specifically, Plaintiffs' Counsel reviewed and researched information provided by Defendant concerning its amount of sales; (i) publicly available reports and research concerning inulin prebiotics; (ii) researched highly technical labeling regulations; and (iii) researched publicly available information regarding Defendant, sales of its Products, its business practices, and prior litigation involving it. *Id.* ¶ 5. The parties also held numerous telephonic and written discussions regarding Plaintiffs' allegations, discovery, and the prospects of settlement, in advance of—and after—a full day mediation. Fisher Decl. ¶ 15. Thus, the proposed Settlement is the result of fully-informed negotiations.

### 6. Experience and Views of Counsel

"Where '[b]oth Paties are represented by experienced counsel,' the recommendation of experienced counsel to adopt the terms of the proposed settlement 'is entitled to great deal of weight.'" *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1302 (S.D. Cal. 2017) (internal citations omitted). Specifically, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness" as the "[a]ttorneys, having an intimate familiarity with a lawsuit after spending years in litigation, are in the best position to evaluate the action, and the Court should not without good cause substitute its judgment for theirs." *Boyd v. Bechtel Corp.* [hereinafter *Betchel Corp.*], 485 F. Supp. 610, 622 (N.D. Cal. 1979). Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* Fisher Decl. Ex. 2, Firm Resume of Bursor & Fisher, P.A; McCrary Decl. ¶ 15, Ex. 1, Firm Resume of Gutride Safier LLP. Based on their experiences, Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation. McCrary Decl. ¶¶ 16-19, 22-25.

Pursuant to N.D. Cal. Guide ¶ 11, information concerning past distributions in comparable class settlements is provided in the McCrary Declaration.  *See* McCrary Decl. ¶ 27 and Ex. 2.

### B.    The Rule 23(e)(2) Factors

#### 1.    The Class Representatives and Class Counsel Have Adequately Represented the Class (Fed. R. Civ. P. 23(e)(2)(A))

Discussed below in greater detail, Plaintiffs' interests align with the other Class Members' interests as their claims are based on the same injuries: they purchased Defendant's Products in reliance on the gut health claims (ECF No. 54 ¶¶ 75, 81, 86) even though, they allege, the Products do not contain enough prebiotic to provide those benefits.  *Id.* ¶ 61.  Plaintiffs had an interest in vigorously pursuing the claims of the Class.  And, as noted below, courts have found Plaintiffs' attorneys adequately meet the obligations and responsibilities of Class Counsel.  Fisher Decl. Ex. 2, Firm Resume of Bursor & Fisher, P.A.; McCrary Decl. Ex. 1, Firm Resume of Gutride Safier LLP.  This factor weighs in favor of approval.

#### 2.    The Settlement Was Negotiated At Arm's Length

In preliminarily evaluating the adequacy of a proposed settlement under Rule 23(e)(2), particular attention should be paid to the process of settlement negotiations.  When a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, there is a presumption that the settlement is fair and reasonable.  *See In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Garner*, 2010 WL 1687832, at *9.    Here, counsel for both Plaintiffs and Defendant are experienced in class action litigation, engaged in protracted settlement discussions, and reached this settlement with the assistance of an experienced neutral.  Fisher Decl. ¶ 26-28; McCrary Decl. ¶¶ 13, 15.  In other words, the negotiations were conducted at arm's length, non-collusive, well-informed (in that they were conducted after an assessment of the strengths and weaknesses of the claims on both sides), conducted between counsel on both sides with decades of class action experience, and utilized the assistance of a well-respected mediator.  Use of a mediator "tends to support the conclusion that the settlement process was not collusive."  *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012).

Under such circumstances, the proposed Settlement is entitled to a presumption of reasonableness, and the Court is entitled to rely upon counsel's opinions and assessments. *See Perks v. Activehours, Inc.*, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021) ("[T]he Court found that Class Counsel have substantial experience in litigating and settling consumer class actions. Despite the relatively early stage of the litigation, Class Counsel obtained sufficient information to make an informed decision about the Settlement and about the legal and factual risks of the case. … The Settlement was also the product of arm's-length negotiations through mediation sessions and follow-up communications supervised by [an experienced neutral]. There is no indication of any collusion between the parties."). Accordingly, the second Rule 23(e)(2) factor has been met.

### 3. <u>The Settlement Provides Adequate Relief to the Class</u>

Whether relief is adequate takes into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(2)(C)(i)-(iv). These factors subsume several *Hanlon* factors, discussed *supra*, including: "the risk, expense, complexity, and likely duration of further litigation" (*Hanlon* Factor 2); "the risk of maintaining class action status throughout the trial" (*Hanlon* Factor 3); and "the amount offered in settlement" (*Hanlon* Factor 4). The Settlement has met each of the *Hanlon* factors.

As to "the effectiveness of any proposed method of distributing relief to the class," it is "important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." *Alvarez v. Sirius XM Radio Inc.*, 2020 WL 7314793, at *6 (C.D. Cal. July 15, 2020) (citing Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*

Here, the Settlement Agreement requires that a Class Member fill out and submit a relatively simple Claim Form, completed online or in hard copy mailed to the Settlement Administrator. Fisher Decl. Ex. 1, § 6.1. The Claimant will have the option of electing to receive

the Class Payment by digital payment, ACH transfer, or check. *Id.* § 6.1.4. The Class Member may attach a Proof of Purchase but is not required to do so. *Id.* § 6.1.3. Only one Claim Form may be filed per Household and a Claimant may receive a maximum of sixteen ($16.00) without Proof of Purchase. *Id.* § 6.1.5(b). This procedure is claimant-friendly, efficient, cost-effective, proportional and reasonable. *See*, *e.g.*, *Alvarez*, 2020 WL 7314793, at *6 ("The Claim process … requires logging on to the Settlement Website and submitting a Claim there, or a Settlement Class Member may print the Claim form from that website and mail a filled-in hard-copy to the Settlement Administrator if they prefer. … [T]his process is not unduly demanding, and [] the proposed method of distributing relief to the Class is effective.").

Additionally, the Settlement Administrator will institute industry standard services to prevent fraudulent claims from being filed. Reed Decl. ¶ 41. Where there are unknown class members and the protocols requiring proof of identity or purchase are limited, Verita's backend data analysis will help identify and remove fraudulent claims. *Id.*

Next, as to "the terms of any proposed award of attorneys' fees," Class Counsel will file a fee application seeking an award of attorneys' fees of up to 30% of the Gross Settlement Amount at least thirty-five (35) days before the Objection and Exclusion Deadline. Fisher Decl. Ex. 1, § 8.1. Attorneys' fees, costs, or expenses shall come solely from the Settlement Fund and be paid to Class Counsel no later than thirty (30) calendar days after the Effective Date. *Id.*

### 4. The Settlement Treats All Class Members Equally

"The final Rule 23(e)(2) factor is whether 'the proposal treats class members equitably relative to each other.'" *Perks*, 2021 WL 1146038, at *6 (citing Fed. R. Civ. P. 23(e)(2)(D)). In assessing this factor, "the Court considers whether the proposal 'improperly grant[s] preferential treatment to class representatives or segments of the class.'" *Id.* (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079).

Here, all Class Members are entitled to the same relief under the Settlement Agreement and all Class Members will receive a pro rata distribution of the Net Settlement Amount based on the number of units of Products purchased by each Class Member. Fisher Decl. Ex. 1, § 1.4. "This pro rata distribution is inherently equitable because it treats Class Members fairly based on the

amount of each member's potential damages." *Perks*, 2021 WL 1146038, at *6.  *See*, *e.g.*, *Martinelli v. Johnson & Johnson*, 2022 WL 4123874, at *6 (E.D. Cal. Sept. 9, 2022) ("Class Members who submit a Proof of Purchase are entitled to receive 'a full monetary refund of the amount(s) shown on the Proof of Purchase' with no limit on the number of units purchased.  Those who submit a Claim Form and not a Proof of Purchase are still entitled to receive a pro rata share albeit for a limited amount, but the Court does not find this to be unfair.").  Thus, this factor weighs in favor of approval.

## VI.    CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE

Plaintiffs respectfully request that the Court conditionally certify the Settlement Class for purposes of effectuating the settlement.  *See Newberg*, § 11.27 (4th ed. 2002).  Plaintiffs also seek the appointment of L. Timothy Fisher of Bursor & Fisher, P.A. and Marie McCrary of Gutride Safier LLP as Class Counsel, and appoint Plaintiffs as Class Representatives.

A class action may be maintained if all the prongs of Rule 23(a) are met, and one of the prongs of Rule 23(b) is met.  Rule 23(a) requires that: (1) the class be so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

### A.    The Class Satisfies Rule 23(a)

#### 1.    <u>Numerosity</u>

"Courts generally find numerosity satisfied if the class includes forty or more members." *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562 n. 2 (N.D. Cal. 2020).  Here, the estimated class size is greater than 400,000, which is the approximate number of potential Class Member email addresses in Defendant's records.  Reed Decl. ¶ 14.  Numerosity is therefore satisfied.

#### 2.    <u>Commonality</u>

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality is established if Plaintiffs' and Class Members' claims "depend on a common contention … of such a nature that it is capable of class-wide resolution[,] which means that determination of its truth or falsity will resolve an issue that is central to the validity of

each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Although the claims need not be identical, they must share common questions of fact or law. *See Alvarez*, 2020 WL 7314793, at *7. "For instance, a class meets the commonality requirement if members share the same legal issues but have different factual foundations." *Id.* Because the commonality requirement may be satisfied by a single common issue, it is easily met. "'[E]ven a single common question will do.'" *Dalchau v. Fastaff, LLC*, 2018 WL 1709925, at *7 (N.D. Cal. Apr. 9, 2018) (quoting *Dukes*, 564 U.S. at 359).

Here, there are multiple common questions of law and fact that will generate common answers apt to drive the resolution of the litigation. Plaintiffs allege that Defendant markets its Products with the same gut health claims printed on the cans. ECF No. 54 ¶¶ 15, 25-27. Plaintiffs allege that the prebiotics present in the Products is insufficient to confer any "gut health" benefits. *Id.* Common legal questions here include whether Defendant's: (1) gut health claims are false misleading, deceptive and/or unlawful; (2) claims and warranties were material; and (3) advertising and marketing regarding the gut health claims were likely to deceive reasonable consumers. ECF No. 54 ¶ 94. Courts routinely find commonality in false advertising cases that are materially indistinguishable from the matter at bar. *See e.g.*, *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) (commonality element satisfied where legal claims were based on claims on beverage labels); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 378 (N.D. Cal. 2010) ("Plaintiff's claims here arise out of the allegedly false statement, worded in several variations made on every Blue Sky container … and therefore arise from the same facts and legal theory."); *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."). Here, commonality is satisfied.

### 3.    Typicality

Rule 23(a)(3) requires that the claims of the representative Plaintiffs be "typical of the claims … of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. To meet the

typicality requirement, the representative Plaintiffs simply must demonstrate that the members of the settlement class have the same or similar grievances. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982).

Here, Plaintiffs allege that they saw the claims "Prebiotic Soda," "For a Healthy Gut," "Be Gut Happy. Be Gut Healthy" and "Prebiotics for a Healthy Gut" on the can as representations and warranties that the Products contained "prebiotics" that would make their "gut healthy." ECF No. 54 ¶¶ 75, 81, 86. They allege that Defendant's gut health claims are false and misleading because the Products do not contain enough prebiotic to cause any meaningful gut health benefits. *Id.* ¶¶ 30-31. These claims are typical of the claims of other Class Members who were exposed to the same false and misleading advertising by Defendant. *Id.* ¶ 96. Thus, Plaintiffs' claims are typical because they arise "from the same event or practice or course of conduct that gave rise to the claims of other class members and [their] claims were based on the same legal theory." *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1033 (9th Cir. 2020) (internal citations omitted). Thus, typicality is met.

### 4. **Adequacy**

The final requirement of Rule 23(a) is that the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A plaintiff and class counsel will adequately represent the class where they: (1) do not have conflicts of interest with other Class Members; and (2) prosecute the action vigorously on behalf of the class. *See Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003). Moreover, adequacy is presumed where a fair settlement was negotiated at arm's-length. *See Newberg*, § 11.28, at 11-59.

Here, Plaintiffs, like the Class Members, reasonably relied on and understood Defendant's gut health claims to mean that the Products provide gut health benefits. ECF No. 54 ¶¶ 81, 86, 126. Plaintiffs and Class Members thus have the same interest in recovering damages. Plaintiffs have no interests antagonistic to those of the proposed Class, as evidenced by this litigation.

Likewise, proposed Class Counsel—Bursor & Fisher, P.A. and Gutride Safier LLP—have extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. Fisher Decl. ¶ 26; *see also id.* Ex. 2, Firm Resume of Bursor & Fisher, P.A; McCrary Decl.

¶ 15, Ex. 1, Firm Resume of Gutride Safier LLP.  Bursor & Fisher, P.A. regularly engages in major complex litigation involving consumer products, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country.  *See, e.g., Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in [six] class action jury trials since 2008.").  Gutride Safier LLP likewise has represented their clients with skill and diligence and obtained an excellent result for the class in dozens of class actions.  *See, e.g., Fitzhenry-Russell, et al. v. Keurig Dr. Pepper, Inc., et al.*, Case No.17-cv-00564-NC (N.D. Cal. April 10, 2019).  Proposed Class Counsel have devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and that of the Class, pursuing those claims through motion practice, conducting informal discovery, participating in private mediation, and negotiating a favorable class action settlement. McCrary Decl. ¶¶ 3-14.  In sum, proposed Class Counsel have vigorously prosecuted this action and will continue to do so throughout its pendency.  *Id.*

## B.    The Class Satisfies Rule 23(b)(3)

In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must also meet one of the three requirements of Rule 23(b) to certify the proposed class.  *See Zinser v. Accufix Research Inst., Inc.*, 253 F. 3d 1180, 1186 (9th Cir. 2001).  A class action may be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) focuses on whether the Defendant's liability may be resolved on a classwide basis, *see Dukes*, 564 U.S. at 359, and whether the proposed Class is "sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Certification under Rule 23(b)(3) will allow Class Members to opt out of the settlement and preserve their right to seek damages independently, which protects Class Members' due process rights.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-48 (1999).  Certification under Rule 23(b)(3) is appropriate

and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F. 3d at 1022. As shown below, Plaintiffs have met the Rule 23(b)(3) requirements.

### 1.    Common Questions Predominate

Predominance exits "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F. 3d. at 1022. And when addressing whether to certify a settlement class, courts consider the fact that a trial will be unnecessary and manageability is not an issue. Here, Plaintiffs' allegations all center around the gut health claims. ECF No. 54 ¶¶ 14-19, 61. These allegations give rise to common questions of law and fact. *Id.* ¶ 94. Plaintiffs also allege that Defendant engaged in a common course of conduct. *Id.* ¶ 15.

### 2.    A Class Action Is a Superior Mechanism

Rule 23(b)(3)'s superiority requirement examines whether the class action device is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. *Id.* Here, Plaintiffs and the Class Members have limited financial resources with which to prosecute individual actions. Plaintiffs are unaware of any individual lawsuits that have been filed by Class Members arising from the same allegations, other than the *Jackson* Action which brought identical claims. Employing the class device will achieve economies of scale, conserve judicial resources, avoid the expense of repetitive proceedings and prevent inconsistent adjudications. *See Hanlon*, 150 F.3d at 1023. As such, the class action device presents far fewer management difficulties and provides the benefits of single adjudication. Thus, a class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the putative Class Members' claims.

### VII.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint counsel … [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). This considers Class

Counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). As discussed above, proposed Class Counsel has extensive experience in prosecuting consumer class actions in general. This Court has already recognized that Class Counsel satisfy the 23(g) elements when it appointed them interim class counsel. ECF No. 36. As a result of their zealous efforts, proposed Class Counsel have secured substantial monetary relief to the Class.

## VIII.    THE SETTLEMENT ADMINISTRATOR SHOULD BE APPROVED

Plaintiffs request approval of Verita as the Settlement Administration. Verita is an experienced and well-known, independent claims administrator. The additional information required by District Guidelines ¶ 2 regarding the selection of Verita is provided in the accompanying Fisher and McCrary Declarations (Fisher Decl. ¶ 31-32 and McCrary Decl. ¶ 26). Estimated costs (Reed Decl. ¶ 43), data policies, and estimated Administration and Notice Costs are provided in the accompanying Reed Declaration ¶¶ 35-41, 45.

## IX.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

### A.    The Contents of the Proposed Class Notice Complies With Rule 23(c)(2)

Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Here, the Notice Plan is designed to reach 70% of Class Members and comport with due process under Fed. R. Civ. P. 23 and the Northern District's Procedural

1  Guidance for Class Action Settlements.  *See* Reed Decl. ¶¶ 10-11.  The proposed notice forms are

2  modeled from the JFC guidance.  *See* Fisher Decl. Ex. 1, Exs. A, B, C, and D.

3      The Notice Plan will provide detailed information about the Settlement, including: (1) a

4  comprehensive summary of its terms; (2) Class Counsel's intent to request attorneys' fees and

5  reimbursement of expenses; and (3) Class Counsel's intent to request service awards for the named

6  Plaintiffs.  The notice forms all contain links to the Settlement Website which contains the Website

7  Notice.  The Website Notice explains the procedures and deadlines for, and effect of, filing a claim,

8  opting out of the settlement, and filing an objection.  Fisher Decl. Ex. 1, Ex. D.

9      **B.      Distribution Of The Class Notice Will Comply With Rule 23(c)(2)**

10

11     The Parties have agreed upon a multi-part Notice Plan that easily satisfies the requirements

12  of both Rule 23 and due process.  First, Defendant will provide the Settlement Administrator with

13  all the names and valid email addresses for potential Class Members it may have in its records.

14  Fisher Decl. Ex. 1, § 7.2.  It is estimated that Defendant's records contain records for

15  approximately 400,000 Class Members.  Reed Decl. ¶ 14.  The Settlement Administrator will send

16  those Class Members direct Email Notice.  Fisher Decl. Ex. 1, § 7.4.1.  The email will inform Class

17  Members of the settlement and direct them to the Settlement Website for more information.  *Id.*

18  The Settlement Administrator will also implement a digital media campaign distributed across

19  popular websites, mobile applications, and social media outlets to achieve approximately

20  29,415,000 impressions.[7]  Reed Decl. ¶ 24.  The Settlement Administrator will publish notice four

21  times consecutively in regional editions of *USA Today*.  *Id.* ¶ 28-29.

22     The Settlement Administrator will establish a Settlement Website that will include case-

23  related documents, a set of frequently asked questions, information on how to submit an Objection

24  or request exclusion, and contact information for Class Counsel, Poppi's Counsel, and the

25  Settlement Administrator.  Fisher Decl. Ex. 1, § 7.4.3.  Finally, the Settlement Administrator will

26  provide notice to state and federal officials as required by the Class Action Fairness Act, 28 U.S.C.

27  ─────────────────

    [7] Impressions are a metric that counts the number of times a user sees a website or other digital
28  content, such as a digital advertisement.

1
2
§ 1715.  Reed Decl. ¶ 42. These proposed methods for providing Notice to the Class comport with both Rule 23 and due process, and the Notice Plan should thus be approved.

## X.    THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE

The last step in the settlement approval process is the Final Approval Hearing at which the parties will seek final approval of the proposed Settlement.  At the Final Approval Hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of final approval of the Settlement.  Class Members, or their counsel, may be heard in support of or in opposition to final approval of the Settlement.  Plaintiffs request the Court issue a schedule establishing the Notice Date, the deadline for submitting timely Claim Forms, exclusions and objections, and for the Final Approval Hearing as follows:

| Item | Approx. Proposed Due Date |
|------|---------------------------|
| Settlement Notice Date | 4 weeks after Preliminary Approval |
| Motion for Attorneys' Fees, Costs, and Service Awards | 46 days after Settlement Notice Date |
| Deadline for claims, objections, and opt-outs | 60 days after Settlement Notice Date |
| Deadline for Settlement Administrator to file a declaration | 14 days after Objection and Opt-out Deadline |
| Deadline for filing Motion for Final Approval | 14 days after Objection and Opt-out Deadline |
| Final Approval hearing | 5 weeks after filing Motion for Final Approval |

## XI.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the proposed Settlement; (2) conditionally certify the settlement Class under Fed. R. Civ. P. 23(b)(3); (3) appoint L. Timothy Fisher of Bursor & Fisher, P.A., and Marie McCrary of Gutride Safier LLP as Class Counsel; (4) appoint Plaintiffs Kristin Cobbs, Sarah Coleman, and Megan Wheeler as Class Representatives for the Settlement Class; (5) appoint Verita

as the Settlement Administrator and order payment of the initial deposit for the estimated

Administrative and Notice Costs; (6) approve the Notice Plan described in the Settlement and the

forms of the Email Notice, Publication Notice, and Website Notice to Class Members and direct its

distribution; (7) mandate procedures and deadlines for exclusion requests and objections; and

(8) schedule a hearing for final approval.  A Proposed Order is submitted herewith.


Dated: March 14, 2025                          **BURSOR & FISHER, P.A**.

                                               By: _____*/s/ L. Timothy Fisher*_____

                                               L. Timothy Fisher (State Bar No. 191626)
                                               Joshua B. Glatt (State Bar No. 354064)
                                               1990 North California Blvd., 9th Floor
                                               Walnut Creek, CA 94596
                                               Telephone: (925) 300-4455
                                               Facsimile:  (925) 407-2700
                                               E-mail: ltfisher@bursor.com
                                                           jglatt@bursor.com


                                               **GUTRIDE SAFIER LLP**
                                               Seth A. Safier (State Bar No. 197427)
                                               Marie A. McCrary (State Bar No. 262670)
                                               Anthony J. Patek (State Bar No. 228964)
                                               100 Pine Street, Suite 1250
                                               San Francisco, CA 94111
                                               E-mail: seth@gutridesafier.com
                                                           marie@gutridesafier.com
                                                           anthony@gutridesafier.com

                                               *Co-lead Interim Class Counsel*

                                               **GUCOVSCHI ROZENSHTEYN, PLLC.**
                                               Adrian Gucovsch (*pro hac vice*)
                                               Benjamin Rozenshteyn (*pro hac vice*)
                                               140 Broadway, Suite 4667
                                               New York, NY 10005
                                               Telephone: (212) 884-4230
                                               Facsimile:  (212) 884-4230
                                               E-mail: adrian@gr-firm.com
                                                           ben@gr-firm.com

                                               *Attorneys for Plaintiff Cobbs*

                                               **KAPLAN FOX & KILSHEIMER LLP**
                                               Laurence D. King (State Bar No. 206423)
                                               Matthew B. George (State Bar No. 239322)
                                               Blair E. Reed (State Bar No. 316791)

Clarissa R. Olivares (State Bar No. 343455)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: (415) 772-4700
Facsimile:  (415) 772-4709
E-mail: lking@kaplanfox.com
          mgeorge@kaplanfox.com
          breed@kaplanfox.com
          colivares@kaplanfox.com

*Attorneys for Plaintiff Wheeler*