UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re VNGR BEVERAGE, LLC LITIGATION | Case No. 24-cv-03229-HSG<br><br>**ORDER GRANTING PRELIMINARY APPROVAL**<br><br>Re: Dkt. No. 55 |

Before the Court is Plaintiffs' unopposed motion for preliminary approval of class action settlement. *See* Dkt. No. 55. The Court held a hearing on the motion, Dkt. No. 59, and now GRANTS it.

**I.   BACKGROUND**

   **A.   Factual Allegations**

This is a putative class brought on behalf of purchasers of Poppi Prebiotic Soda ("Poppi"). *See* Dkt. No. 54 ("TAC") ¶ 1.  Plaintiffs allege that Defendant VNGR Beverage, LLC markets Poppi as "gut healthy" due to its inclusion of prebiotic dietary fiber, but that this representation is misleading, as Poppi actually harms gut health. *Id.* ¶ 5. Plaintiffs allege that Poppi is harmful due to its low fiber content, high sugar content, and use of agave inulin, a type of prebiotic fiber that, according to Plaintiffs, is less effective for promoting gut health and has been linked to adverse health effects. *Id.* ¶¶ 3–4. Specifically, Plaintiffs claim that because Poppi products contain at most two grams of prebiotic fiber, consumers would need to drink more than four Poppi sodas per day for 21 consecutive days in order to notice any positive "prebiotic" effects. *Id.* ¶ 61. However, Plaintiffs allege that any such benefits would be offset by the simultaneous consumption of an unhealthy amount of sugar due to Poppi's high sugar content. *Id.* ¶ 62. Plaintiffs maintain that

1    consumers reasonably relied on Defendant's "gut healthy" representations in paying a premium
2    for Poppi products, and thus suffered economic injuries due to those misrepresentations. *Id.*
3    ¶¶ 68–71.
4        Plaintiff Kristin Cobbs filed an initial complaint in May 2024. Dkt. No. 1. The *Cobbs*
5    action was eventually related to and consolidated with another class action against Defendant in
6    June 2024. Dkt. Nos. 18, 22. Plaintiffs filed an amended consolidated complaint in July 2024.
7    Dkt. No. 29. After a third case was related and consolidated, Dkt. No. 31, Plaintiffs filed a second
8    amended consolidated complaint in August 2024. Dkt. No. 35. Defendant then filed a motion to
9    dismiss the second amended complaint. Dkt. No. 37. A fourth case was related and consolidated
10   in October 2024. Dkt. No. 42. The consolidated action was then stayed while the parties
11   negotiated and finalized a settlement agreement. Dkt. Nos. 49, 51. The Court granted the parties'
12   request to file a third amended consolidated complaint ahead of filing a motion for preliminary
13   approval, and accordingly terminated the pending motion to dismiss. Dkt. No. 53. In March
14   2025, Plaintiffs filed a third amended consolidated complaint, Dkt. No. 54, and an unopposed
15   motion for preliminary approval, Dkt. No. 55. The Court held a hearing on the motion on May 8,
16   2025. Dkt. No. 59.
17       The operative complaint asserts the following causes of action against Defendant:
18   violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*
19   ("CLRA"); violations of the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500,
20   *et seq.*; common law fraud, deceit, and/or misrepresentation; violations of the California Unfair
21   Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); unjust enrichment; breach
22   of express warranty; and breach of implied warranty. *See* TAC ¶¶ 99–164.
23       **B.**    **Settlement Agreement**
24       In December 2024, the parties participated in a full-day mediation with Judge Jay C.
25   Gandhi (Ret.). *See* Dkt. No. 55-1 ("Fisher Decl.") ¶ 15. The parties ultimately entered into a
26   settlement agreement. *See id.*, Ex. 1 ("Settlement Agreement," or "SA"). The key terms are as
27   follows:
28       <u>Class Definition</u>: The Settlement Class is defined as "all persons in the United States who,

between January 23, 2020 and the Settlement Notice Date, purchased in the United States, for household use and not for resale or distribution, one or more of the Products." SA § Definitions, I. "Products" is defined as "all flavors and package sizes of Poppi's beverages sold between January 23, 2020 and the Settlement Notice Date." *Id.* § Definitions, JJ.

Settlement Benefits: Defendant will make a $8,900,000 non-reversionary payment. SA § ¶ 1.1. This gross settlement fund will cover Court-approved attorneys' fees and costs, settlement administration fees, incentive payments to the named Plaintiffs, and payments to Class Members for approved claims. *Id.* § 1.3. To receive settlement benefits, Class Members must fill out and submit a claim form, online or in hard copy, certifying under penalty of perjury which and how many units of the Product they purchased since January 23, 2020, and that they purchased the Products for personal or household use only. *Id.* § 6.1.2. Class Members will be asked to provide Proof of Purchase if they have any, but they are not required to do so in order to submit a claim form. *Id.* at § 6.1.3. "Proof of Purchase" means a receipt or other documentation from a third-party commercial source (i.e., a store or online retailer) that reasonably establishes the fact and date of purchase of the Products by a Class Member. *Id.* § Definitions, II. Only one claim form may be submitted per Household, which is defined as "any number of persons occupying the same dwelling unit." *Id.* § 6.1.6; Definitions, H. However, if more than one claim is submitted per Household, those claims will be combined and treated as a single claim. *See id.* § 6.1.6

The Settlement Administrator will review all claims to determine their validity, and will reject any claim that is untimely, does not comply with instructions on the claim form, or is identified as fraudulent. *Id.* § 6.3. Class Members who submit an approved claim will receive $0.75 per single can of Product purchased, $3.00 per 4-pack of the Products purchased, $6.00 per 8-pack of the Products purchased, or $9.00 per 12-pack or 15-pack of the Products purchased. *Id.* § 6.1.5. The minimum class payment for any approved claim is $5.00 per Household (subject to availability of funds), and the maximum class payment for any approved claim without proof of purchase is $16.00 per Household. *Id.*

If the total value of all approved claims either exceeds or falls short of the funds available for distribution to Class Members, then the amounts of the class payments will be reduced or

increased pro rata. SA § 1.6. If there is an upward adjustment, the maximum amount a person who submits a claim without a proof of purchase may receive is $80. *Id.* § 6.4. The parties propose that any remaining funds would go to Feeding America as the *cy pres* recipient. *Id.* § 1.6.

<u>Release</u>: According to the Settlement Agreement, "the Releasing Persons," meaning Plaintiffs and all Class Members and their successors, shall

> "release and forever discharge and covenant not to sue, and are permanently enjoined from suing the Released Persons and including Poppi's past, present or future direct or indirect parents, subsidiaries, divisions, affiliates and related entities, stockholders, shareholders, officers, directors, partners, insurers, investors, employees, agents, attorneys, advisors, consultants, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, related companies, divisions, and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, purchasers, and assigns of each of the foregoing) from the Released Claims."

SA § 9.1. Further, "Released Claims" means:

> "any and all claims, demands, actions, causes of action, lawsuits, arbitrations, damages, liabilities, or penalties, whether federal or state, known or unknown, asserted or unasserted, regardless of legal theory, legal, equitable, or otherwise, that were or could have been asserted in the Consolidated Action or that arise out of or relate to the labeling, advertising, or formulation of the Products between January 23, 2020 and the Settlement Notice Date."

*Id.* § Definitions, LL. The definitions of "Released Claims" does not include any Class Members' personal injury claims. *Id.*

Notice by email and publication to Class Members will include the following language:

> "If you do not Opt-Out, you give up your right to bring a separate lawsuit. To object, you must file a written Objection that complies with the requirements in the Long Form Notice available at www.poppisettlement.com. . . . Do nothing, and you will not receive a Class Payment and you will release the Released Claims against Defendant that relate to the allegations in the lawsuits."

SA, Ex. B, C. The settlement website also will include the following language:

> "If you are a Class Member and you do not Opt-Out from the Settlement, you will be legally bound by all orders and judgments of the Court, and you will also be legally bound to release the Released Claims as provided in the Settlement, even if you do not file an Approved Claim or receive a Class Payment. This means that in exchange for being a Class Member and being eligible for the Class Payment, you will not be able to sue, continue to sue, or be part of any other lawsuit against VNGR Beverage, LLC d/b/a Poppi and/or any of the Released Persons that involves the marketing, labeling, or formulation of the Products from January 23, 2020 to the present."

SA, Ex. D.

4

Incentive Awards:  According to the Settlement Agreement, Class Counsel may apply for an incentive award for each of the named Plaintiffs of no more than $5,000.  SA § 8.2.  The proposed class notice further states that the combined total amount of awards sought may not exceed $20,000.  *See* SA, Ex. D at 3.

Attorneys' Fees and Costs:  The Settlement Agreement provides that Class Counsel will apply for an award of up to 30% of the gross settlement amount.  SA § 8.1.  Defendant reserves the right to oppose the fee application at its discretion.  *Id.*

Opt-Out Procedure:  Class members must object to the Settlement Agreement or opt out (via regular mail only) within 60 days after the date that the notice plan commences.  SA §§ 4.3, 4.4, 5.2, 5.4.

## II.   PROVISIONAL CLASS CERTIFICATION

The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).  Class certification is a two-step process.  *First*, a plaintiff must establish that each of the four requirements of Rule 23(a) is met:  numerosity, commonality, typicality, and adequacy of representation.  *Id.* at 349.  *Second*, it must establish that at least one of the bases for certification under Rule 23(b) is met.  Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), it must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"The criteria for class certification are applied differently in litigation classes and settlement classes."  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) ("*Hyundai II*").  When deciding whether to certify a litigation class, a district court must consider manageability at trial.  *Id*.  However, this concern is not present in certifying a settlement class.  *Id*. at 556–57.  In deciding whether to certify a settlement class, a district court "must give heightened attention to the definition of the class or subclasses."  *Id*. at 557.

5

### A. Rule 23(a) Certification

The Court finds that all the requirements of Rule 23(a) are met:

- **Numerosity.** Joinder of the hundreds of thousands of estimated Class Members would be impracticable. *See* Dkt. No. 55 ("Mot.") at 26 (estimating over 400,000 Class Members, based on the number of customer email addresses in Defendant's records).

- **Commonality.** Common questions of law and fact include whether Defendant's claims about the "gut health" of the Products are false, misleading, deceptive, and/or unlawful, and whether such claims were likely to deceive reasonable customers. *See* Mot. at 27.

- **Typicality.** Plaintiffs' claims are both factually and legally similar to those of the putative class because all Class Members purchased the Products and were exposed to the same representations by Defendant. *See* SA § Definitions, I; Mot. at 27–28.

- **Adequacy of Representation.** The Court is unaware of any actual conflicts of interest in this matter and no evidence in the record suggests that either Plaintiffs or counsel have a conflict with other class members. Plaintiffs' counsel has been appointed class counsel in numerous federal and state class actions. *See* Dkt. No. 55-1 ¶ 26; *id.* Ex 2; Dkt. No. 55-2 ¶ 26; *id.*, Ex 1. The Court finds that proposed Class Counsel and Plaintiffs have prosecuted this action vigorously on behalf of the class to date and will continue to do so.

### B. Rule 23(b)(3)

The Court also finds that the predominance and superiority requirements of Rule 23(b)(3) are met:

- **Predominance.** The Court concludes that for purposes of settlement, common questions predominate here because Plaintiffs and the settlement Class Members all purchased the same products from Defendant that allegedly included the same product label misrepresentations. In addition, the Court at this stage need not analyze whether any differences in the state laws underlying some of Plaintiffs'

claims prevent provisional class certification. *See Hyundai II*, 926 F.3d at 561–62 (holding that district courts do not need "to address choice-of-law issues beyond those raised by objectors" before certifying a settlement class).

- **Superiority.** Especially given the relatively modest value of the individual claims here, class action enables the most efficient use of Court and attorney resources and reduces costs to the class members by allocating costs among them. Further, this forum is appropriate, and there are no obvious difficulties in managing this class action.

### C. Class Representative and Class Counsel

Because the Court finds that the Plaintiffs meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiffs as Class Representatives. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Counsel have investigated and litigated this case throughout its existence and have submitted declarations detailing their expertise in representing plaintiffs in consumer class action suits. *See* Dkt. No. 55-1 ¶ 26; *id.* Ex 2; Dkt. No. 55-2 ¶ 26; *id.*, Ex 1. Accordingly, the Court appoints Bursor & Fisher, P.A. and Gutride Safier LLP as Class Counsel. *See* Fed. R. Civ. P. 23(g)(1)(A) (listing factors courts must consider when appointing class counsel).

## III. PRELIMINARY SETTLEMENT APPROVAL

Finding that provisional class certification is appropriate, the Court considers whether it should preliminarily approve the parties' class action settlement.

### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

1 Where the parties reach a class action settlement prior to class certification, district courts
2 apply "a higher standard of fairness and a more probing inquiry than may normally be required
3 under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotations omitted).
4 Such settlement agreements "'must withstand an even higher level of scrutiny for evidence of
5 collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing
6 the court's approval as fair.'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir.
7 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A
8 more "exacting review is warranted to ensure that class representatives and their counsel do not
9 secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a
10 duty to represent." *Id.* (quotations omitted).

11 Courts may preliminarily approve a settlement and notice plan to the class if the proposed
12 settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does
13 not grant improper preferential treatment to class representatives or other segments of the class;
14 (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo
15 Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018)
16 (citation omitted). Courts lack the authority, however, to "delete, modify or substitute certain
17 provisions. The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026.

### B. Analysis

#### i. Evidence of Conflicts and Signs of Collusion

The first factor the Court considers is whether there is evidence of collusion or other conflicts of interest. *See Roes*, 944 F.3d at 1049. The Ninth Circuit has directed district courts to look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (*i.e.*, an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that returns unclaimed funds to the defendant. *Id.*

The Settlement Agreement provides that Class Counsel will apply for an award of up to 30% of the gross settlement amount. SA § 8.1. This amount is larger than the Ninth Circuit's benchmark for a reasonable attorneys' fees award. *See*, *e.g.*, *In re Bluetooth Headset*, 654 F.3d at

8

942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). However, there is no clear sailing agreement, as Defendant reserves the right to oppose the fee application for any reason at its discretion. S*ee* SA § 8.1. And the proposed settlement is non-reversionary. *See id*. § Definitions, V. The agreement provides that any unclaimed funds remaining after the final distribution of the settlement fund, and taking into account any increased payments to Class Members, will first be used to pay unanticipated additional costs of settlement administration, and the remainder will be paid to the *cy pres* recipient. *See id.* § 1.6. The Court will determine the appropriate amount of fees and awards at the final approval stage, but finds that the proposed fee amount is not so disproportionate to raise concerns at this approval stage.

To justify their above-benchmark fee request, Plaintiffs argue that a 30% award "reflects standard awards in other common fund settlements," and cite *Williams v. MGM-Pathe Communications Corp.*, 129 F.3d 1026 (9th Cir. 1997). *See* Mot. at 16. The cited case does not accord with more recent Ninth Circuit authority confirming that the benchmark is 25%. *See In re Bluetooth,* 654 F.3d at 942; *see also In re Facebook, Inc. Internet Tracking Litig.*, No. 22-16903, 2024 WL 700985, at *2 (9th Cir. Feb. 21, 2024), *cert. denied sub nom. Isaacson v. Meta Platforms, Inc.*, 145 S. Ct. 1138 (2025) (referring to "25-percent benchmark" for common fund cases). In addition, the Court notes that although Plaintiffs' preliminary approval motion states that the reasonableness of the attorneys' fees request is discussed in a later section of the motion, *see* Mot. at 16, the cited section only discusses the reasonableness of the settlement amount, not the requested fee award. *See id.* at 20–21. The Court reminds counsel that any request for fees, especially one seeking an upward adjustment from the benchmark, must be sufficiently justified on specific grounds. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 2024 WL 700985, at *2 (upholding district court's approval of fee award seeking upward departure of four percentage points above benchmark because an increased fee was justified by "class counsel's creation of new law in the Ninth Circuit and its attainment of substantial monetary and injunctive relief for the class").

9

####       ii.    *Cy Pres* Distribution

The Court must also evaluate whether the parties' proposed *cy pres* recipient is appropriate. A *cy pres* award must qualify as "the next best distribution" to giving the funds to class members. *Dennis*, 697 F.3d at 865. "Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary," and there must be a "'driving nexus between the plaintiff class and the *cy pres* beneficiaries.'" *Id.* (citation omitted). That is to say, a *cy pres* award must be "'guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class[.]'" *Id.* (citations omitted). A *cy pres* distribution is not appropriate if there is "'no reasonable certainty' that any class member would benefit from it." *Id.* (citation omitted).

Here, the parties have selected Feeding America to receive any remaining funds, including those resulting from uncashed checks. SA § 1.6. Feeding America is a non-profit organization that provides free meals and nutrition education, and advocates for access to food and nutrition assistance programs. *See* Mot. at 16. Class Counsel states that Feeding America's "mission of providing nutrition education is in line with the gut health benefit representations and 'healthier' soda representations at issue in this case." Fisher Decl. ¶ 15.

The Court preliminarily finds that Feeding America shares the interests of the Settlement Class Members, who purchased products marketed as healthy, in promoting accurate nutrition and health information to the public. Accordingly, the Court preliminarily finds that there is a sufficient nexus between the *cy pres* recipient and the Settlement Class.

####       iii.   Preferential Treatment

The Court next considers whether the Settlement Agreement provides preferential treatment to any Class Member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*, 2018 WL 6099948, at *8 (quotations omitted).

The Settlement Agreement authorizes Class Counsel to apply for incentive awards for each of the Class Representatives of no more than $5,000.  SA § 8.2.  The Court will ultimately determine whether any of these individuals are entitled to such an award and the reasonableness of the amount requested.  Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).  Plaintiffs must provide sufficient evidence to allow the Court to evaluate their awards "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'"  *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request.  Nevertheless, because incentive awards are not per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval.  *See Rodriguez,* 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis omitted)).

### iv. Settlement within Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval.  To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *Lenovo*, 2018 WL 6099948, at *8.  This requires the Court to evaluate the strength of Plaintiffs' case.

Plaintiffs' counsel argues that a comparison of settlement amount to the expected recovery at trial supports the reasonableness of the settlement here.  Mot. at 20.  Plaintiffs' counsel estimates, based on their experience in comparable litigation, that the price premium associated with Defendant's alleged gut health claims is between five and ten percent.  Fisher Decl. ¶ 19.  Given that single cans of the Product retail for approximately $2.50, Class Members would recover approximately between $0.13 and $0.25 per can under the price premium model.  Mot. at 21.  Under the Settlement Agreement, Class Members with approved claims will thus receive a higher percentage of the Products' total cost at $0.75 per can, $3.00 per 4-pack of the Products,

1  $6.00 per 8-pack, and $9.00 per 12- or 16-pack.  SA § 6.1.5.  Further, each claimant will receive a
2  minimum payment of $5.00.  *Id.* § Definitions, Y.  At the hearing, counsel also estimated that the
3  settlement amount constitutes approximately 25 to 50 percent of the maximum alleged damages.
4         Finally, Plaintiffs argue that continuing the litigation would pose significant risks to their
5  ability to certify the settlement class and prevail at trial because Defendant strongly denies liability
6  and would mount a rigorous defense to Plaintiffs' claims.  Mot. at 18–20.
7         Given that the settlement amount enables Class Members to receive a higher monetary
8  payment per can of the Products than they likely would receive following a trial, and the
9  substantial risks that Plaintiffs identify if the case were to go forward, the Court finds that the
10  settlement amount is reasonable and weighs in favor of granting preliminary approval.

         **v.**     **Obvious Deficiencies**

12         The Court also considers whether there are obvious deficiencies in the Settlement
13  Agreement.  The Court finds no obvious deficiencies, and therefore finds that this factor weighs in
14  favor of preliminary approval.
15                         *     *     *
16         Having weighed the relevant factors, the Court preliminarily finds that the Settlement
17  Agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval.  The Court
18  **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when
19  submitting their motion for final approval.  The proposed order should thoroughly address all of
20  the topics set forth in the Northern District's Procedural Guidance for Class Action Settlements.[1]
21  The parties should also review this Court's recent orders granting final approval of class action
22  settlements and draft their proposed order accordingly.[2]

---

[1] *See* N.D. Cal. Procedural Guidance for Class Action Settlements, https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (updated Sept. 5, 2024).

[2] *See, e.g.*, *Smith v. Apple, Inc.*, No. 21-CV-09527-HSG, 2025 WL 1266927, at *1 (N.D. Cal. May 1, 2025); *Smith v. Keurig Green Mountain, Inc.*, No. 18-CV-06690-HSG, 2023 WL 2250264 (N.D. Cal. Feb. 27, 2023); *Chess v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-07287-HSG, 2022 WL 4133300 (N.D. Cal. Sept. 12, 2022).

## IV. PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). District courts have "broad power and discretion vested in them by [Rule 23]" in determining the contours of appropriate class notice. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

>  (i)    the nature of the action;
>  (ii)   the definition of the class certified;
>  (iii)  the class claims, issues, or defenses;
>  (iv)   that a class member may enter an appearance through an attorney if the member so desires;
>  (v)    that the court will exclude from the class any member who requests exclusion;
>  (vi)   the time and manner for requesting exclusion; and
>  (vii)  the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The parties have agreed that a third-party settlement administrator, Verita Global, LLC ("Verita"), will send the class notice. SA § F.1; Definitions, QQ. Defendant will provide Verita with the names and valid email addresses for Class Members it may have in its records. *Id.* § 7.2. Verita will then send these Class Members the class notice via email. *Id.* § 7.4.1. It will also implement a digital media campaign to distribute the class notice via programmatic advertising across popular websites, mobile applications, and social media outlets Facebook and Instagram to achieve approximately 29,415,000 impressions, targeted to "the most appropriate users." Dkt. 55-3 ("Reed Decl.") ¶ 24.[3] Verita will also publish the class notice four times in the Los Angeles, San Francisco, and Phoenix regional editions of *USA Today*. *Id.* ¶¶ 28–29. Finally, Verita will

---

[3] To identify the target digital audience, Verita used "a research definition of all adults who have purchased canned regular cola, diet cola, regular non-cola soft drinks, or diet non-cola soft drinks and who also buy food labeled as probiotic." Reed Decl. ¶ 18.

1    maintain a website that will include the class notice, publicly filed papers related to the case, and
2    additional information, and will establish a toll-free phone number and email address that Class
3    Members can contact. *Id.* ¶¶ 29–31.
4    　　　　The Court finds that the proposed notice process is "reasonably calculated, under all the
5    circumstances, to apprise all class members of the proposed settlement." *Roes*, 944 F.3d at 1045
6    (quotation omitted).
7    　　　　As to the substance of the notice, the parties have attached a copy of claim form, *see* Dkt.
8    No. 55-1, Ex. A, and the full proposed class notice to the Settlement Agreement, *see id.*, Ex. D.
9    This notice will be posted on the settlement website. SA § 7.4.4. The parties have also provided
10   copies of the proposed email notice. *See id.*, Ex. B, and proposed publication notice, *see id.*, Ex.
11   C. All of the notices explain the nature of the action and claims, define the class, and inform Class
12   Members about what payment they will receive and how to opt out of or object to the Settlement
13   Agreement. *See id.*
14   　　　　However, as the Court noted at the hearing on the motion, the original proposed claim
15   form and notices use the term "Household" without defining it. *See* Dkt. No. 55-1 at 33, 36, 39,
16   42, 46. Further, the notices do not clarify that, per the terms of the Settlement Agreement, "[i]f
17   more than one Claim is submitted per Household, all such Claims shall be combined and treated as
18   a single Claim for purposes of the limits set forth herein." *See* SA § 6.1.6. The Court explained at
19   the hearing that this information should be included in the notices so that Class Members fully
20   understand the meaning of the term "Household" for purposes of the settlement and are not
21   discouraged from submitting claims. Consequently, the Court directed Plaintiffs' counsel to
22   submit updated notices that define "Household" and explain that claims from individuals in the
23   same Household will be combined rather than rejected. *See* Dkt. No. 59. Counsel timely filed
24   revised versions of the claim form and notices, and the Court finds that the updated versions
25   adequately reflect the changes discussed. *See* Dkt. Nos. 60-1, 60-2, 60-3, 60-4.[4]

---

[4] Counsel also updated the notices to reflect that Plaintiff Carol Lesh is no longer serving as Class Representative. *See* Dkt. No. 60 at 2. Accordingly, the updated notices state that Class Counsel shall request up to $15,000 in incentive awards for the three Plaintiffs instead of $20,000 for four Plaintiffs. *See, e.g.*, Dkt. No. 60-2 at 3.

1  In addition, none of the notices, including the updated versions, inform class members that they may object specifically to the motion for attorneys' fees and motion for incentive awards. For example, the full class notice only states that a copy of the attorneys' fees motion will be available on the website, and that "the Court will determine what amounts of fees, costs, expenses, and Service Awards to award." *See* Dkt. No. 60-4 at 7. Similarly, the section of the full class notice regarding objections informs Class Members that they generally "can ask the Court to deny approval of *the Settlement* by timely filing an Objection," without also explaining that they may also object to the award of attorneys' fees and incentives. *See id.* at 10 (emphasis added). To better enable Class Members to understand that they may specifically object to these motions in addition to the proposed settlement, Class Counsel shall include language in all notices: (1) specifically stating that Class Members may object to the attorneys' fees motion and request for Plaintiffs' incentive awards; and (2) specifically stating the deadlines for filing these motions and for any class member objections to them. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94 (9th Cir. 2010) (holding that under Rule 23(h), class members must be given a full and fair opportunity to examine and object to attorneys' fees motion).

  The Court finds that with these changes, the content of the updated versions of the proposed claim form and notices provides sufficient information about the case and thus conforms with due process requirements. *See Hyundai II*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." (quotation omitted)).

//
//
//
//
//
//
//
//

## V. CONCLUSION

The Court **GRANTS** the motion for preliminary approval. Dkt. No. 55. The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order.

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment, at least 45 days after the filing of the motion for attorneys' fees and incentive payments | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan with the edits identified above.

**IT IS SO ORDERED.**

Dated: 5/23/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge