**GUTRIDE SAFIER LLP.**
Seth A. Safier (State Bar No. 197427)
Marie A. McCrary (State Bar No. 262670)
Hayley Reynolds (State Bar No. 306427)
Anthony J. Patek (State Bar No. 228964)
100 Pine Street, Suite 1250
San Francisco, CA 94111
E-mail: seth@gutridesafier.com
          marie@gutridesafier.com
          hayley@gutridesafier.com
          anthony@gutridesafier.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          jglatt@bursor.com

*Co-Lead Interim Class Counsel*

*[additional counsel listed on signature page]*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **In re VNGR BEVERAGE, LLC LITIGATION** | Case No. 4:24-cv-03229-HSG (lead)<br><br>No. 4:24-cv-03612-SK<br><br>**PLAINTIFFS' MOTION FOR ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS**<br><br><u>MOTION HEARING</u><br><br>DATE:        November 20, 2025<br>TIME:        2:00 p.m.<br>CTRM:      2 (4th Floor)<br><br>Judge:  Hon. Haywood S. Gilliam, Jr. |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLEASE TAKE NOTICE** that on November 20, 2025, at 2:00 p.m. in the United States District Court for the Northern District of California, before the Honorable Haywood S. Gilliam, Jr. in the Oakland Courthouse, 1301 Clay Street, in Courtroom 2 on the 4th Floor, Plaintiffs Kristin Cobbs, Sarah Coleman, and Megan Wheeler (collectively, "Plaintiffs") will and do move, consistent with the Settlement Agreement filed in the above-entitled action (ECF 55-1, Ex. 1), for an award of $2,670,000 in attorneys' fees, an award of $23,593.48 in costs, and incentive awards in the amount of $5,000 each for Plaintiffs Kristin Cobbs, Sarah Coleman, and Megan Wheeler. This Motion is supported by the Settlement Agreement (ECF 55-1, Ex. 1); the Memorandum of Points and Authorities in Support of Plaintiffs' Application for Attorneys' Fees, Costs, and Incentive Awards; the Declaration of Seth A. Safier in Support of Plaintiffs' Application for Attorneys' Fees, Costs, and Incentive Awards ("Safier Decl."); the Declaration of L. Timothy Fisher in Support of Plaintiffs' Application for Attorneys' Fees, Costs, and Incentive Awards ("Fisher Decl."); the Declaration of Adrian Gucovschi in Support of Plaintiffs' Application for Attorneys' Fees, Costs, and Incentive Awards ("Gucovschi Decl."); the Declaration of Laurence D. King ("King Decl.") in Support of Plaintiffs' Motion for Attorneys' Fees and Motion for Incentive Payments and accompanying exhibits; Declarations of Plaintiffs Cobbs, Wheeler, and Coleman; and the pleadings and papers on file in this action and any other matter of which this Court may take notice.

1

**TABLE OF CONTENTS**

2
                                                                                    **PAGE(S)**

3  I.    INTRODUCTION & BACKGROUND.................................................................1

4  II.   APPROVAL OF THE FEES AND COST AWARDS........................................2

5        A.   Plaintiffs' Counsel's Requested Fee Is a Reasonable Percentage of
             the Total Benefit Made Available to the Class..........................................3
6
             1.   The Settlement Confers Substantial Benefits to the Class ............................4
7
             2.   Risk of Further Litigation Supports the Fee Request ...................................6
8
             3.   The Skill and Quality of Plaintiffs' Counsel's Work Supports
9                 Plaintiffs' Fee Request ................................................................7

10           4.   The Contingent Nature of the Fees Supports Granting the Fee
                  Request. ........................................................................8
11
        B.   As a Cross-Check, Plaintiffs' Counsel's Requested Fee Is Also
12           Reasonable When Using the Lodestar Approach.......................................8

13      C.   It Is Appropriate to Apply a Positive Multiplier to Class Counsels'
             Lodestar. .........................................................................12
14
        D.   Plaintiffs' Counsel Requests an Award of Its Actual Expenses..............................15
15
    III.  APPROVAL OF THE INCENTIVE AWARDS. ...........................................15
16
    IV.   CONCLUSION ..........................................................................16
17
18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**PAGE(S)**

3

**CASES**

4

*Andrade-Heymsfield v. NextFoods, Inc.*,
    2024 WL 3871634 (S.D. Cal. Apr. 8, 2024) ................................................................. 5

5

*Andrews v. Equinox Holdings, Inc.*,
    570 F. Supp. 3d 803 (N.D. Cal. 2021) ....................................................................... 11

6

*Arenson v. Board of Trade of City of Chicago*,
    372 F. Supp. 1349 (N.D. Ill. 1974) ........................................................................... 14

7

8

*Behrens v. Wometco Enterprises, Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988) ............................................................................... 12

9

10

*Bluetooth Headset Prods. Liability Litig.*,
    654 F.3d 935 (9th Cir. 2011) ...................................................................................... 2

11

*Bolton v. U.S. Nursing Corp.*,
    2013 U.S. Dist. LEXIS 150299 (N.D. Cal. Oct. 18, 2013) ......................................... 8

12

13

*Bowling v. Pfizer, Inc.*,
    922 F. Supp. 1261 (S.D. Ohio 1996) ......................................................................... 14

14

*Buccellato v. AT&T Operations, Inc.*,
    2011 WL 3348055 (N.D. Cal. June 30, 2011) ........................................................... 14

15

16

*Camacho v. Bridgeport Fin., Inc.*,
    523 F.3d 973 (9th Cir. 2008) ...................................................................................... 9

17

18

*Dragu v. Motion Picture Indus. Health Plan*,
    159 F. Supp. 3d 1121 (N.D. Cal. 2016) ...................................................................... 9

19

*Dyer v. Wells Fargo Bank, N.A.*,
    303 F.R.D. 326 (N.D. Cal. 2014) ............................................................................... 12

20

21

*Elder v. Hilton Worldwide Holdings, Inc.*,
    2021 WL 4785936 (N.D. Cal. Feb. 4, 2021) ............................................................. 11

22

23

*Elgindy v. AGA Serv. Co.*,
    2024 U.S. Dist. LEXIS 196527 (N.D. Cal. Oct. 29, 2024) ........................................ 10

24

*Farrell v. Bank of Am. Corp., N.A.*,
    827 F. App'x 628 (9th Cir. 2020) ............................................................................... 8

25

26

*Gibson & Co. Ins. Brokers, Inc. v. Jackson Nat. Life Ins. Co.*,
    2008 WL 618893 (C.D. Cal. Feb. 27, 2008) ............................................................. 16

27

28

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ................................................................................... 2

*Hendricks v. Starkist Co.*,
  2016 WL 5462423 (N.D. Cal. Sept. 26, 2016) ................................................... 15

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................................. 6

*Hessefort v. Super Micro Comput., Inc.*,
  2023 U.S. Dist. LEXIS 198353 (N.D. Cal. May 5, 2023) ................................... 10

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................. 3, 8

*In re Animation Workers Antitrust Litig.*,
  2016 U.S. Dist. LEXIS 156720 (N.D. Cal. Nov. 11, 2016) ................................. 10

*In re Continental Illinois Securities Actions*,
  962 F.2d 566 (7th Cir. 1992) .............................................................................. 13

*In re High-Tech Employee Antitrust Litig.*,
  2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ..................................................... 11

*In re MacBook Keyboard Litig.*,
  2023 U.S. Dist. LEXIS 92063 (N.D. Cal. May 25, 2023) ................................... 3, 4

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .............................................................................. 16

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) .................................................................................. 3

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ..................................................... 10

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ................................................................... 11, 13, 14

*Kaupelis v. Harbor Freight Tools USA., Inc.*,
  2022 WL 2288895 (C.D. Cal. Jan. 12, 2022) ..................................................... 11

*Kelly v. Wengler*,
  822 F.3d 1085 (9th Cir. 2016) .............................................................................. 9

*Ketchum v. Moses*,
  24 Cal. 4th 1122 (2001) ...................................................................................... 13

*Larsen v. Trader Joe's Co.*,
  2014 U.S. Dist. LEXIS 95538 (N.D. Cal. July 11, 2014) ................................... 3, 8

*Lealao v. Beneficial California, Inc.*,
    82 Cal. App. 4th 19 (2000) ............................................................................. 9, 14

*Lopez v. Youngblood*,
    2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ............................................... 2

*Ludlow v. Flowers Foods, Inc.*,
    2024 WL 1162049 (S.D. Cal. Mar. 18, 2024) ............................................... 13

*Mauss v. NuVasive, Inc.*,
    2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) .................................................. 5

*McShan v. Hotel Valencia Corp.*,
    2021 U.S. Dist. LEXIS 69558 (N.D. Cal. Apr. 9, 2021) ................................. 9

*Mendoza v. Hyundai Motor Co.*,
    2017 WL 34059 (N.D. Cal. Jan 23, 2017) ..................................................... 16

*Merola v. Atlantic Richfield Co.*,
    515 F.2d 165 (3d Cir. 1975) .......................................................................... 14

*Miller v. Travel Guard Grp., Inc.*,
    2024 U.S. Dist. LEXIS 238130 (N.D. Cal. Dec. 9, 2024) .............................. 10

*Morris v. Lifescan, Inc.*,
    54 F. App'x 663 (9th Cir. 2003) ................................................................... 3

*Nitsch v. DreamWorks Animation SKG Inc.*,
    2017 WL 2423161 (N.D. Cal. June 5, 2017) ................................................. 11

*Nozzi v. Hous. Auth. for the City of Los Angeles*,
    2018 WL 1659984 (C.D. Cal. Feb. 15, 2018) ............................................... 11

*Nwabueze v. AT&T, Inc.*,
    2014 WL 324262 (N.D. Cal. Jan. 29, 2014) ................................................. 2

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010) ....................................................................................... 9

*Perez v. Rash Curtis & Associates*,
    2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) .......................................... 11, 12

*Retta v. Millennium Products, Inc.*,
    2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) ............................................... 6

*Rodman v. Safeway Inc.*,
    2018 U.S. Dist. LEXIS 143867 (N.D. Cal. Aug. 22, 2018) ........................... 12

*Serrano v. Priest*,
    20 Cal. 3d 25 (1977) ..................................................................................... 9

*Smith v. Apple, Inc.*,
  2025 U.S. Dist. LEXIS 83589 (N.D. Cal. May 1, 2025)............................................. 10

*Smith v. CRST Van Expedited, Inc.*,
  2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ............................................................. 16

*Smith v. Keurig Green Mt., Inc.*,
  2023 U.S. Dist. LEXIS 32327 (N.D. Cal. Feb. 27, 2023) ............................................. 8

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
  2005 WL 1213926 (E.D. Pa. May 19, 2005) ........................................................... 12

*Sypherd v. Lazy Dog Rests., LLC*,
  2023 U.S. Dist. LEXIS 23257 (C.D. Cal. Feb. 10, 2023) ............................................. 4

*Thayer v. Wells Fargo Bank*,
  92 Cal. App. 4th 819 (2001) ................................................................................. 14

*Tierno v. Rite Aid Corp.*,
  2009 WL 10699905 (N.D. Cal. Nov. 9, 2009) ......................................................... 12

*United Steelworkers of Amer. v. Phelps Dodge Corp.*,
  896 F.2d 403 (9th Cir. 1990) ................................................................................ 10

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ......................................................................... 15

*Vasquez v. Coast Valley Roofing, Inc.*,
  266 F.R.D. 482 (E.D. Cal. 2010) .............................................................................. 3

*Vincent v. Hughes Air West*,
  557 F.2d 759 (9th Cir. 1977) ................................................................................ 15

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ...................................................................... 3, 12, 13

*Weeks v. Google LLC*,
  2019 WL 9135563 (N.D. Cal. Dec. 13, 2019) ........................................................... 6

*Williams v. MGM Pathe Commc'ns. Corp.*,
  129 F.3d 1026 (9th Cir. 1997) ................................................................................. 2

*Wren v. RGIS Inventory Specialists*,
  2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ............................................................. 3

**RULES**

Fed. R. Civ. P. 23(g) ............................................................................................ 7

1

**OTHER AUTHORITIES**

2

*Incentive Awards to Class Action Plaintiffs: An Empirical Study*,
    53 UCLA L. Rev. 1303 (2006) ............................................................................................ 16

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION & BACKGROUND

In this suit, Plaintiffs alleged that Defendant's labeling of its prebiotic soda (the "Products") with the phrases "for a healthy gut," "Be Gut Healthy," and "Prebiotics for a Healthy Gut" (collectively, the "Prebiotic Representations") was false and misleading. Plaintiffs alleged that the Prebiotic Representations were misleading because they lead reasonable consumers to believe that they will receive gut health benefits from the Products, but in reality, the Products do not support gut health and in fact harm gut health because the Products contain more sugar than fiber. As further explained in Plaintiffs' briefing in support of settlement approval (ECF 55), the settlement confers significant benefits on all U.S. purchasers of Defendant's Products, excluding resale purchasers, and achieves the outcomes sought in the litigation. The settlement reflects that:

- Defendant agreed to create a non-reversionary Settlement Fund of $8,900,000 against which Class Members may file a Claim to receive a Cash Payment of up to the following: seventy-five cents ($0.75) per each Single Can Unit of the Products purchased; three dollars ($3.00) per 4-pack Unit of the Products purchased; six dollars ($6.00) per 8-pack Unit of the Products purchased; nine dollars ($9.00) per 12-pack or 15-pack Unit of the Products purchased. All Class Members that submit a Valid Claim are entitled to a Minimum Cash Payment of $5.00.
- If a Class Member does not provide Proof of Purchase, the Class Member can claim a maximum Cash Payment of $16.00 per Household.

Plaintiffs and their counsel have not yet received any compensation for their work on the three consolidated cases or for the out-of-pocket expenses they have incurred. They collectively expended hundreds of hours investigating, litigating, and negotiating to reach the successful settlement of the cases. This motion is submitted pursuant to the Court's Order (ECF 63) to apply for an award of attorneys' fees, costs, and an incentive awards as provided in the Settlement Agreement. The amounts will be paid out of the settlement common fund.

Plaintiffs also request payment from the Settlement Fund of their out-of-pocket expenses, approximately $23,593.48, plus attorneys' fees in the amount of $2,670,000, which represents 30% of the common fund. *Id*. ¶ 8.1. The Parties negotiated these provisions of the Settlement Agreement

1   only after negotiating and reaching an agreement as to all the other material terms. Such an

2   approach is endorsed by the *Manual For Complex Litigation*. *See Manual For Complex Litigation*

3   ¶ 21.7 (4ᵗʰ ed. 2004) ("Separate negotiation of the class settlement before an agreement on fees is

4   generally preferable."). This request is in line with standard awards under other common fund

5   settlements that award fees as a percentage of the fund, as set out in *Williams v. MGM Pathe*

6   *Commc'ns. Corp.*, 129 F.3d 1026 (9th Cir. 1997). As discussed herein, the request is also

7   reasonable under a lodestar-multiplier cross-check. The resulting settlement is the product of a non-

8   collusive, adversarial negotiation in light of the work devoted by Class Counsel under California

9   law. Class Counsel's corresponding request for fees and costs is fair, just and reasonable under

10  California law and should be granted.

11       Finally, as provided in the Settlement Agreement, Plaintiffs also request payment from the

12  Settlement Fund of Incentive Awards of $5,000 each for Plaintiffs Cobbs, Coleman, and Wheeler.

13  ECF 55-1, Ex. 1 at ¶ 8.2. The Incentive Awards are designed to compensate Plaintiffs for (1) the

14  time and risk they took in prosecuting this action (including the risk of liability for Defendant's

15  costs and for negative attention from the press and on social media) and (2) agreeing to a release

16  broader than the one that will bind settlement class members. *Id*. at ¶¶ 8.2, 9.3.

17       **II.    APPROVAL OF THE FEES AND COST AWARDS**

18       Under Ninth Circuit standards, a District Court may analyze and issue an attorneys' fee

19  award: (1) as a percentage of the total benefit made available to the settlement class, including

20  costs, fees, and injunctive relief; or (2) under the "lodestar" method. *See, e.g., Bluetooth Headset*

21  *Prods. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *Nwabueze v. AT&T, Inc.*, No. C 09-

22  01529 SI, 2014 WL 324262, at *2-3 (N.D. Cal. Jan. 29, 2014); *Lopez v. Youngblood*, No. CV-F-

23  07-0474 DLB, 2011 WL 10483569, at *11-12 (E.D. Cal. Sept. 2, 2011). Plaintiffs' fee request is

24  reasonable under either of these approaches. Further, an attorney is entitled to "recover as part of

25  the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee

26  paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and

27  citation omitted). To support an expense award, plaintiffs should file an itemized list of their

28  expenses by category, listing the total amount advanced for each category, allowing the Court to

assess whether the expenses are reasonable. *See Wren v. RGIS Inventory Specialists*, No. 06-cv-05778-JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011); District Guidelines ¶ 6. Plaintiffs have done that here.

Plaintiffs request an award of $2,670,000 for attorneys' fees. This represents 30% of the $8,900,000 common fund, and a multiplier of Class Counsel's lodestar of approximately 3.2. Both the percentage method and lodestar method require examination of (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538, at *28-29 (N.D. Cal. July 11, 2014). Each of the relevant factors supports Plaintiffs' request. For the reasons explained below, Plaintiffs' request for fees is reasonable and should be awarded.

### A.     Plaintiffs' Counsel's Requested Fee Is a Reasonable Percentage of the Total Benefit Made Available to the Class.

"The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. However, . . . in 'most common fund cases, the award exceeds that benchmark.'" *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010); *see also In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2023 U.S. Dist. LEXIS 92063, at *42-43 (N.D. Cal. May 25, 2023) (awarding fees equal to 30% of the fund and noting multiple courts have done the same); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) (explaining that an attorney fee award of 30% is appropriate in most common fund settlements); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorneys' fee award of 33% of the recovery); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorneys' fee award of 33% of the recovery). In deciding on a fee award, the Court must consider "all of the circumstances of the case" such as the results achieved, the risk undertaken by Class Counsel, benefits obtained beyond the Settlement Amount, and whether Class Counsel declined other work to pursue the Actions. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-49 (9th Cir. 2002) (affirming a 28% fee award). The Court may also consider

the skill required and quality of the work. *Sypherd v. Lazy Dog Rests., LLC*, No. 5:20-cv-00921-FLA (KKx), 2023 U.S. Dist. LEXIS 23257, at *12-15 (C.D. Cal. Feb. 10, 2023).

In *Sypherd*, the court found it was reasonable to award fees equal to 30% of the fund where: (1) the $2.15M fund provided a benefit class members could not have obtained individually, particularly because it was unlikely they would have even discovered the practices at issue; (2) there were significant litigation risks given the lack of on-point authority, unique legal questions; (3) class counsel was very experienced with class actions and skillfully and earnestly litigated the case through discovery and several motions; and (4) class counsel litigated the case on a contingent basis. *Id.* Similarly, in *MacBook Keyboard*, the court awarded fees of 30% where (1) class counsel "achieved excellent results" by obtaining a fund representing between 9% and 28% of total estimated damages; (2) the class action against a major corporation was risky, particularly in light of potential decertification, trial, a battle of experts, and appeals; (3) the class benefited from the experience and skill of class counsel, as evidenced by class counsel's ability to prevail on motions to dismiss and to certify a class while litigating against highly qualified and experienced defense counsel; and (4) class counsel took the case on a contingency fee basis. 2023 U.S. Dist. LEXIS 92063, at *39-43.

As explained below, all of these factors justify an award of 30% in this case.

### 1.    The Settlement Confers Substantial Benefits to the Class

The results achieved in the Settlement represent substantial benefits for the class. Defendant has agreed to create a Settlement Fund of $8,900,000 from which consumers who submit Valid Claims can receive a Cash Payment up to the following: seventy-five cents ($0.75) per each Single Can Unit of the Products purchased; three dollars ($3.00) per 4-pack Unit of the Products purchased; six dollars ($6.00) per 8-pack Unit of the Products purchased; nine dollars ($9.00) per 12-pack or 15-pack Unit of the Products purchased. All Class Members that submit a Valid Claim are entitled to a Minimum Cash Payment of $5.00. The Minimum Cash Payment to any Settlement Class Member who submits a Valid Claim is $5.00 per Household. Settlement Class Members who do not provide Proof of Purchase may obtain a maximum Cash Payment of sixteen dollars ($16.00).

Based on Plaintiffs' Counsel's experience in comparable litigation, the price premium associated with the Gut Health Representations is likely between five and ten percent (5-10%). ECF 55-1 ¶ 19 (Fisher Declaration in support of preliminary approval of settlement); Fisher Decl. ¶ 18. Thus, the Cash Payment for Valid Claims exceeds, on a per-Unit basis, the payments that the Class would be awarded if Plaintiffs were successful at trial: a single can of the Product sells at retail for upward of $2.50. If Plaintiffs recovered the entire amount of the monetary damages under the price premium model, the maximum potential recovery available to Class Members per single can would be approximately $0.13-$0.25. This result warrants an upward adjustment. *See e.g., Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *6 (S.D. Cal. Dec. 6, 2018) (where settlement was "approximately 23 to 34 percent" of maximum damages weighed in favor of upward adjust to 30 percent of common fund).

Under this Settlement, a Class Member with an Approved Claim is entitled to a Class Payment of seventy-five cents ($0.75) per each Single Can Unit purchased, three dollars ($3.00) per 4-pack Unit purchased, six dollars ($6.00) per 8-pack Unit purchased and nine dollars ($9.00) per 12-pack or 15-pack unit purchased. ECF 55-1, Ex. 1 § 6.1.5. These amounts constitute a significant percentage of the Products' total cost. In addition, each Claimant is entitled to the Minimum Payment of five dollars ($5.00) and there is no maximum limit on the recovery Claimants may receive with Proof of Purchase. *Id*. Given that Defendant moved to dismiss all of Plaintiffs' claims, this Settlement is an outstanding result as Defendant could have prevailed on the motion to dismiss, narrowed the scope of the Products at issue, the breadth of the Class, and/or the claims. Moreover, even if Plaintiffs won at trial, Class Members would still need to file claims to receive compensation as Defendant does not have records of individual purchases, and the overall recovery would likely be lower.

The settlement in this case is also significantly larger than settlements in comparable cases. *See, e.g., Andrade-Heymsfield v. NextFoods, Inc.*, 2024 WL 3871634 (S.D. Cal. Apr. 8, 2024) (approving $1.25 million settlement where the plaintiff alleged that a probiotic drink did not provide the promised health benefits); *Metague v. Woodbolt Distrib. LLC,* D. Md. Case No. 8:20-cv-2186-PX, Dkt. No. 67 (approving $3 million settlement where the plaintiff alleged that a drink

had zero calories but the drink actually contained 30-50 calories); *Bayol v. Health-Ade LLC*, N.D. Cal. Case No. 3:18-cv-1462-MMC, Dkt. No. 59 (approving $3.9 million settlement in case alleging that a beverage understated its sugar content and failed to disclose its alcohol content); *Hezi v. Celsius Holdings, Inc.*, 2023 WL 2785820 (S.D.N.Y. Apr. 5, 2023) (approving $7.8 million settlement where the plaintiff alleged that a beverage included preservatives despite a representation that it contained "no preservatives"); *Retta v. Millennium Products, Inc.*, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) (approving $8.25 claims-made settlement where the plaintiffs alleged that the defendant failed to disclose the alcohol content of its kombucha beverage).

Thus, the "most critical factor" in analyzing a fee award, *i.e.*, the benefits for the class, strongly supports Plaintiffs' request of 30% of the settlement fund. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also Weeks v. Google LLC*, 2019 WL 9135563, at *3 (N.D. Cal. Dec. 13, 2019) ("The settlement in this case creates a $7.25 million non-revisionary common fund that Class Counsel estimate is approximately 38 percent of the maximum class-wide damages. … The recovery represents an excellent result thus supporting an increase from the benchmark."). The results obtained for members of the Class here warrants a departure from the 25% benchmark.

### 2. Risk of Further Litigation Supports the Fee Request

To prevail at trial, Plaintiffs would have to prove that Defendant's labeling and advertisements were unlawful and misleading; that consumers relied on the misrepresentations; the representations caused injuries; and that there were recoverable damages or restitution for the Class. Defendant also would likely oppose class certification. Although Plaintiffs believe the evidence obtained in discovery would establish the prerequisites for certification as well as Defendant's liability and damages, Defendant vigorously denies those allegations. Among other things, Defendant was prepared to argue that its labeling advertising was truthful and not misleading to a reasonable consumer. Further litigation would have required significant expert work given the novel ingredients and claims at issue on Defendant's Products. Plaintiffs also faced challenges in certifying a class and, if a class or classes were certified, establishing the amount of class-wide damages. Moreover, even if Plaintiffs prevailed at trial, any recovery could be delayed for years by an appeal. These obstacles would have made it considerably difficult to obtain a

similar recover through litigation. Thus, the risk of protracted litigation supports Plaintiffs' fee request.

### 3. The Skill and Quality of Plaintiffs' Counsel's Work Supports Plaintiffs' Fee Request

Plaintiffs' Counsel are experienced litigators whose skill and quality of work led to significant benefits for the Settlement Class. Plaintiffs devoted significant resources to developing the theory of the case and drafting the complaints, relying on complex scientific research into the ingredients in Defendants' Products. *See* ECF 35 at ¶¶ 26-67. Plaintiffs briefed the motion to dismiss, which promoted settlement before the Court issued its decision on the motion. ECF 43. Beyond Plaintiffs' Counsel's skillful investigation of the facts and application of the law, Counsel's efforts to date included, without limitation: (1) significant pre-filing investigation; (2) drafting and filing the class action complaints, a consolidated complaint, and amended complaints; (3) drafting and filing an opposition to Defendant's motion to dismiss; (4) drafting and filing case management conference statements and case management stipulations; (5) drafting a mediation statement and participating in an all-day mediation session before Hon. Jay Gandhi; (6) negotiating and drafting the Settlement Agreement along with corresponding documents, including the claim form and notice forms; (7) drafting and filing the motion for approval and supporting documents, including a proposed preliminary approval order and a proposed final judgment; (8) attending oral argument on the motion for approval; (8) ensuring the efficient and complete claims process by engaging closely with the Claim Administrator; and (9) drafting and filing this motion for attorneys' fees, costs, and incentive awards. Safier Decl. ¶¶ 5-17. Plaintiffs' Counsel experience and skill significantly contributed to the outcome of this litigation and supports Plaintiffs' fee request.

Plaintiffs' Counsel also agreed to work together and avoided an unnecessary dispute over leadership. By self-organizing and working harmoniously with one another, they moved the case forward swiftly and saved the Court from having to resolve a leadership dispute under Fed. R. Civ. P. 23(g). Safier Decl. ¶¶ 8-10; 15-16. In addition, litigation tasks were allocated to prevent "over-lawyering" and inefficiency. *Id.* ¶ 16. The bulk of the work was performed by a small

number of attorneys fully familiar with the complex factual and legal issues presented by this litigation. *Id*. This division of labor permitted the work to be done efficiently, resulting in an economy of service and avoiding duplication of effort. *Id*.

### 4. The Contingent Nature of the Fees Supports Granting the Fee Request.

"Courts have recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing for their work." *Larsen*, 2014 U.S. Dist. LEXIS 95538, at *30. Plaintiffs' Counsel bore considerable risk in litigating this case wholly on a contingent basis and advancing all costs. Safier Decl. ¶¶ 20-21; Fisher Decl. ¶¶ 20-23. Since Plaintiffs' Counsel's work is primarily focused on contingent-fee class action cases, it does not get paid in every case. Sometimes, it gets nothing or is awarded fees equal to only a small percentage of the amount it had worked. Here, Plaintiffs' Counsel expended nearly 881 hours litigating this case on a contingent-basis, with no guarantee of compensation. Thus, this factor supports Plaintiffs' fee request. *See Smith v. Keurig Green Mt., Inc*., No. 18-cv-06690-HSG, 2023 U.S. Dist. LEXIS 32327, at *26 (N.D. Cal. Feb. 27, 2023) ("Courts have found that the importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or as a flat fee.").

### B. As a Cross-Check, Plaintiffs' Counsel's Requested Fee Is Also Reasonable When Using the Lodestar Approach.

The Court is not obligated to perform a cross-check on Class Counsel's lodestar when evaluating the percentage of the fund to be awarded as fees. *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) (affirming district court's decision to use percentage-of-recovery to calculate fees without performing lodestar cross-check). Indeed, "[i]n a common fund case, a lodestar method does not necessarily achieve the stated purposes of proportionality, predictability and protection of the class and can encourage unjustified work and protracting the litigation." *Bolton v. U.S. Nursing Corp.*, No. 12-cv-4466-LB, 2013 U.S. Dist. LEXIS 150299, at *13 (N.D. Cal. Oct. 18, 2013) (citing *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D.

Cal. 1989)). Should the Court elect to utilize a lodestar cross-check, Class Counsel's fee here is likewise eminently reasonable.

Under the lodestar approach, "[t]he lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000); *see also Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'") (alteration in original) (internal citation omitted) (quoting *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 551 (2010)). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained and the contingent risk presented." *Lealao*, 82 Cal. App. 4th at 26; *see also Serrano v. Priest* ("*Serrano III*"), 20 Cal. 3d 25, 48-49 (1977). "Where, as here, the lodestar is being used as a cross-check, courts may do a rough calculation 'with a less exhaustive cataloging and review of counsel's hours.'" *McShan v. Hotel Valencia Corp.*, No. 19-cv-03316-LHK, 2021 U.S. Dist. LEXIS 69558, at *4 (N.D. Cal. Apr. 9, 2021). However, "[t]he line between over- and under-preparation is difficult to police, and so the Ninth Circuit has cautioned against second guessing a winning attorney's judgment about the time necessary to present a winning case." *Dragu v. Motion Picture Indus. Health Plan*, 159 F. Supp. 3d 1121, 1129 (N.D. Cal. 2016) (citation omitted).

"Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

Here, Plaintiffs' Counsel's lodestar through the date of this motion is approximately $827,683. *See* Safier Decl. ¶ 22 ($$410,031); Fisher Decl. ¶ 24 ($223,785); Gucovschi Decl. ¶ 7 ($75,717.50); King Decl. ¶ 6 ($118,150). Plaintiffs' Counsel calculated their lodestar using their regular billing rates, which for the attorneys involved range from $450 to $1,590 per hour and for the paralegals range from $295 to $400 per hour. Safier Decl. ¶ 24; Fisher Decl., Ex. 2; King Decl.

¶ 6.  Plaintiffs' Counsel includes graduates of top law schools (including Berkeley, Yale, Harvard, and NYU), and the principal work was performed by lawyers with 8 or more years of experience.[1] Safier Decl. ¶ 39, Ex. 1; Fisher Decl. Ex. 1-2. "Affidavits of the plaintiffs' attorn[ies] … regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff'[s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Amer. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

        For attorneys and staff at the GSLLP firm, these hourly rates are equal to or below market rates in San Francisco for attorneys of Plaintiffs' Counsel's background and experience. Safier Decl. ¶¶ 39-40. Additionally, the rates charged by Plaintiffs' Counsel have been deemed reasonable in connection with the approval of their fee applications in at least twelve recent matters. *Id*. Courts in other cases over the past several years have also approved similar fees charged by other firms. *See, e.g., Smith v. Apple, Inc.*, No. 21-cv-09527-HSG, 2025 U.S. Dist. LEXIS 83589, at *23 (N.D. Cal. May 1, 2025) (approving hourly rates between $850 and $1,300 for associates and senior attorneys); *Miller v. Travel Guard Grp., Inc.*, No. 21-cv-09751-TLT, 2024 U.S. Dist. LEXIS 238130, at *23 (N.D. Cal. Dec. 9, 2024) (approving hourly rate of $1,252.09); *Elgindy v. AGA Serv. Co.*, No. 20-cv-06304-JST, 2024 U.S. Dist. LEXIS 196527, at *29 (N.D. Cal. Oct. 29, 2024) (approving hourly rates between $825 and $1175 for associates and partners); *Glob. Indus. Inv. Ltd. v. 1955 Capital Fund I GP LLC*, No. 21-cv-08924-HSG, 2023 U.S. Dist. LEXIS 173343, at *12 (N.D. Cal. Sep. 27, 2023) (granting fees, minus certain work, at hourly rates between $1,085 and $1,650 for counsel and partners and between $645 and $960 for associates); *Hessefort v. Super Micro Comput., Inc.*, No. 18-cv-00838-JST, 2023 U.S. Dist. LEXIS 198353, at *25 (N.D. Cal. May 5, 2023) (approving rates from $770 to $1,350 for partners or of counsel attorneys); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 39115, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving reasonable rates of up to $1600 for partners, $790 for associates, and $490 for paralegals); *In re Animation Workers Antitrust Litig.*, No. 14-cv-4062-LHK, 2016 U.S. Dist. LEXIS 156720, at *20-

---

[1] Some of Plaintiffs' Counsel also previously worked for top defense firms; had they remained at those firms their rates would be even higher than they are currently. Safier Decl. ¶¶ 40.

21 (N.D. Cal. Nov. 11, 2016) (approving hourly rates of senior attorneys of between $845 and $1,200).

For attorneys and staff at Bursor & Fisher, these hourly rates are also equal to or below market rates in San Francisco Bay Area for attorneys of Plaintiffs' Counsel's background and experience. California courts have repeatedly held rates commensurate with Class Counsel's rates to be fair and reasonable. *See*, *e.g.*, *Andrews v. Equinox Holdings, Inc.* 570 F. Supp. 3d 803, 808 (N.D. Cal. 2021) (approving lead counsel rate of $1,250); *Nozzi v. Hous. Auth. for the City of Los Angeles,* 2018 WL 1659984, at *7 (C.D. Cal. Feb. 15, 2018) (at 2017 rates, rates of $1,150, $750 and $765 for senior attorneys in private law firm approved); *Nitsch v. DreamWorks Animation SKG Inc.,* 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (finding rates for senior attorneys of between $870 to $1200 per hour to be reasonable); *In re High-Tech Employee Antitrust Litig.,* 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (approving billing rates of $490 to $975 for partners, $310 to $800 for non-partner attorneys, and $190 to $430 for paralegals, law clerks, and litigation support staff). Courts in California have found Bursor & Fisher's rates reasonable at levels close to where they currently stand. *See*, *e.g.*, *Perez v. Rash Curtis & Associates,* 2020 WL 1904533, at *20 (N.D. Cal. Apr. 17, 2020) (finding Bursor & Fisher's hourly rates to be reasonable); *Kaupelis v. Harbor Freight Tools USA., Inc.* 2022 WL 2288895, at *9 (C.D. Cal. Jan. 12, 2022) (finding Bursor & Fisher's "rate range from $700-$1000 for partners, $315-$450 for associates, and $350-$300 for paralegals … are reasonable compared to other awards in California courts"); *Elder v. Hilton Worldwide Holdings, Inc.* 2021 WL 4785936, at *9 (N.D. Cal. Feb. 4, 2021) (finding Bursor & Fisher's rates reasonable). Bursor & Fisher's rates have increased only slightly in the time since these orders. *See* Fisher Decl., Ex. 2.

Class Counsels' current rates are appropriate given the deferred and contingent nature of counsel's compensation. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement.").

**C.    It Is Appropriate to Apply a Positive Multiplier to Class Counsels' Lodestar.**

In a historical review of numerous class action settlements, the Ninth Circuit found that lodestar multipliers normally range from 0.6 to 19.6.  *See Vizcaino v. Microsoft Corp.* 290 F.3d at 1051 n.6.  State and federal courts often approve greater multipliers.  *See* Newberg, *Attorney Fee Awards,* § 14.03 at 14–5 (1987) ("multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.").  For instance, Judge Yvonne Gonzalez Rogers of the Northern District of California explicitly approved a multiplier of between 13.4 to 18.5 in a case where Bursor & Fisher was also class counsel.  *See Perez*, 2020 WL 1904533, at *20-21; *see also Perera v. Chiron Corp.* Civ. No. 95-20725-SW (N.D. Cal. 1999, 2000) (approving multiplier of 9.14; cited in California Class Actions and Coordinated Proceedings § 15.05); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.* 2005 WL 1213926, at *18 (E.D. Pa. May 19, 2005) (awarding 20% of a $100 million settlement fund in attorneys' fees, which represented a multiplier of 15.6); *Tierno v. Rite Aid Corp.*, 2009 WL 10699905, at *1 (N.D. Cal. Nov. 9, 2009) ("In evaluating the requested award based on the lodestar -plus-multiplier approach, the Court notes that other courts addressing fee requests in class action cases have approved multipliers as high as 5.0 to the underlying lodestars."); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988) ("The range of lodestar multiples in large and complicated class actions runs from a low of 2.26 to a high of 4.5" (internal citations omitted)).

The requested fee equates to a 3.2 multiplier, and possibly lower depending on how much work Plaintiffs' Counsel performs prior to (and after) Final Approval. A multiplier of 3.2 falls well within the range commonly awarded by courts. *See Rodman v. Safeway Inc.*, No. 11-cv-03003-JST, 2018 U.S. Dist. LEXIS 143867, at *16 (N.D. Cal. Aug. 22, 2018) (noting multipliers of one to four times the lodestar are common and awarding fees equal to 28% of the common fund, which represented a multiplier of approximately 1.75 of the lodestar); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) ("A 2.83 multiplier falls within the Ninth Circuit's presumptively acceptable range of 1.0–4.0."). *See also* Fisher Decl. ¶¶ 28-30.  Similarly, "[t]he Ninth Circuit has recognized that multipliers typically can range up to 4" and courts "often apply

multipliers that far exceed that range." *Ludlow v. Flowers Foods, Inc.* 2024 WL 1162049, at *8 (S.D. Cal. Mar. 18, 2024).

Further, where a plaintiff's firm succeeds, it is appropriate to award a multiplier, to compensate for the risks the firm regularly undertakes. As the California Supreme Court has explained:

> [a] contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans. A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.

*Ketchum v. Moses*, 24 Cal. 4th 1122, 1132–33 (2001). Indeed, in *In re Continental Illinois Securities Actions*, 962 F.2d 566 (7th Cir. 1992), a federal appellate court reversed a fee award in a class action for, among other things, the trial court's refusal to enhance class counsel's lodestar for contingency risk. It explained, "[t]he judge refused to award a risk multiplier—that is, to give the lawyers more than their ordinary billing rates in order to reflect the risky character of their undertaking. This was error in a case in which the lawyers had no source of compensation for their services." *Id.* at 569. "[T]he failure to make any provision for risk of loss may result in systematic under-compensation of Class Counsel in a class action case, whereas we have said the only fee that counsel can obtain is, in the nature of the case, a contingent one." *Id.*

Indeed, a critical factor bearing on fee petitions in Ninth Circuit courts is the level of risk of non-payment faced by Class Counsel at the inception of the litigation. *See, e.g.*, *Vizcaino*, 290 F.3d at 1048. The contingent nature of Class Counsel's fee recovery, coupled with the uncertainty that any recovery would be obtained, are significant. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). In *In re Wash. Pub. Power*, the Ninth Circuit recognized that:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases …. [I]f this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Id.* at 1299-1300 (citations omitted) (internal quotations marks omitted).

Throughout this case, Class Counsel expended substantial time and costs to prosecute a nationwide class action suit with no guarantee of compensation or reimbursement in the hope of prevailing against sophisticated defendants represented by high caliber attorneys. *See* Fisher Decl. ¶ 20; 23. Class Counsel obtained a highly favorable result for the Class, knowing that if its efforts were ultimately unsuccessful, it would receive no compensation or reimbursement for its costs. This fact alone supports a finding that Class Counsel is entitled to a multiplier.

Additionally, Plaintiffs' Counsel reached a settlement before class certification and thus should be rewarded for their efficiency (and the concomitant savings to the judicial system). *See Id*. ¶ 31. In *Lealao*, the Court explained that, unless multipliers are provided when counsel agree to settle early, there will be "a disincentive to settle promptly inherent in the lodestar methodology. Considering that our Supreme Court has placed an extraordinarily high value on settlement, it would seem counsel should be rewarded, not punished, for helping to achieve that goal, as in federal courts." *Lealao*, 82 Cal. App. 4th at 52 (citing *Merola v. Atlantic Richfield Co.*, 515 F.2d 165, 168 (3d Cir. 1975) (lodestar-multiplier approach "permits the court to recognize and reward achievements of a particularly resourceful attorney who secures a substantial benefit for his clients with a minimum of time invested"); *see also Buccellato v. AT&T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (explaining "[t]he resulting multiplier of 4.3 is reasonable" because of, among other factors, "the excellent and quick results obtained for the Class."); *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1282-1283 (S.D. Ohio 1996) (awarding a multiplier where case settled "in swift and efficient fashion"); *Arenson v. Board of Trade of City of Chicago*, 372 F. Supp. 1349, 1358 (N.D. Ill. 1974) (awarding a fee of four times the normal hourly rate on ground that, if the case had not settled and gone to verdict, "there is no doubt that the number of hours of lawyer's time expended would be more than quadruple the number of hours expended to date"). Similarly, in *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819 (2001), the Court noted that "[t]he California cases appear to incorporate the 'results obtained' factor into the 'quality' factor: i.e., high-quality work may produce greater results in less time than would work of average quality, thus justifying a multiplier." *Id.* at 838.

1    Finally, Plaintiffs' Counsel will perform more work before the Settlement becomes

2    effective, including, communicating with Class Members, supervising the Claim Administrator,

3    responding to objections, and opposing any appeals. Plaintiffs' Counsel anticipates another

4    working an additional 20-35 hours before this Settlement is entirely complete and an estimated 100

5    hours if this Court's judgment is appealed. Safier Decl. ¶ 17; Fisher Decl. ¶ 33. Thus, Plaintiffs'

6    requested fees are reasonable and merited under the lodestar cross-check.

7    **D.    Plaintiffs' Counsel Requests an Award of Its Actual Expenses.**

8    Plaintiffs' Counsel requests that, in addition to reasonable attorneys' fees, the Court grant its

9    application to reimburse $23,23,593.48 in out-of-pocket expenses that it incurred in connection

10   with the prosecution of the Actions. Safier Decl. ¶ 41, Ex. 2; Fisher Decl. ¶ 25, Ex. 3; King Decl. ¶

11   7; Gucovschi Decl. ¶ 7. Plaintiffs' Counsel is typically entitled to reimbursement of all reasonable

12   out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement. *See*

13   *Vincent v. Hughes Air West*, 557 F.2d 759, 769 (9th Cir. 1977). As required by the District

14   Guidelines ¶ 6, a current accounting of the expenses incurred are itemized in counsels'

15   declarations. Safier Decl. ¶ 41, Ex. 2; Fisher Decl. Ex. 3; King Decl. ¶ 7; Gucovschi Decl. ¶ 7.

16   **III.    APPROVAL OF THE INCENTIVE AWARDS.**

17   This Court should also approve the requested Incentive Awards to the Plaintiffs as they are

18   just, fair and reasonable. In deciding whether to approve such an award, a court should consider:

19   "(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the

20   notoriety and personal difficulty encountered by the class representative; (3) the amount of time

21   and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal

22   benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van*

23   *Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995); *see also* District Guidelines

24   ¶ 7. Further, as a matter of public policy, representative service awards are necessary to encourage

25   consumers to challenge perceived false advertising and unfair business practices. Each seeks

26   $5,000 and "[m]any courts in the Ninth Circuit have held that a $5,000 incentive award is

27   'presumptively reasonable.'" *Hendricks v. Starkist Co.*, 2016 WL 5462423, at *13 (N.D. Cal. Sept.

28   26, 2016) (Gilliam, Jr. J.).

1
2
3
4
5
6
7
8

The named plaintiffs in the Actions took on substantial risk, most importantly the risk of publicity and notoriety. Indeed, this case received significant media attention. Safier Decl. ¶ 42; Fisher Decl. ¶ 27.  Additionally, Plaintiffs provided Counsel with information regarding their experiences and claims to enable them to join this case. Plaintiffs Cobbs, Coleman, and Wheeler remained actively involved in the Actions prior to and after settlement. Safier Decl. ¶ 43; Wheeler Decl. ¶¶ 3-4; Cobbs Decl. ¶¶ 3-4; Coleman Decl. ¶¶ 3-4. Finally, they all agreed to a broader general release than the release applicable to the other Settlement Class Members. *See* ECF 55-1, Ex. 1 ¶ 9.3.

9
10
11
12
13
14
15
16
17
18
19
20
21
22

The proposed Incentive Awards are reasonable in light of the Plaintiffs' efforts in litigating the Actions and the relief to the Settlement Class resulting from this Settlement. *See* Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1333 (2006) (an empirical study of incentive awards to class action plaintiffs has determined that the average aggregate incentive award within a consumer class action case is $29,055.20, and that the average individual award is $6,358.80.); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (awarding plaintiff $5,000 involving a class of 5,400 people and a total recovery of $1.725 million); *Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293, *6 (S.D. Cal. Jan. 14, 2013) (finding the amount of the incentive payments requested, $15,000, is well within the range awarded in similar cases); *Gibson & Co. Ins. Brokers, Inc. v. Jackson Nat. Life Ins. Co.*, 2008 WL 618893 (C.D. Cal. Feb. 27, 2008) (awarding $5,000 incentive fee); *Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685-BLF, 2017 WL 34059, at *15 (N.D. Cal. Jan 23, 2017) ("$5,000 is presumptively reasonable.") (citations omitted). The Court should award them.

23

## IV.  CONCLUSION

24
25
26
27

For the foregoing reasons, Class Counsel asks this Court to grant this application for an award of $5,000 each for Plaintiffs Kristin Cobbs, Sarah Coleman, and Megan Wheeler; $2,670,000 in attorneys' fees; and $23,593.48 in costs incurred in this Litigation to be paid by from the Settlement Fund in accordance the Settlement Agreement.

28

1   Dated:  August 12, 2025                    **BURSOR & FISHER, P.A**.

2                                              By:    /s/ L. Timothy Fisher
                                                      L. Timothy Fisher
3

4                                              L. Timothy Fisher (State Bar No. 191626)
                                               Joshua B. Glatt (State Bar No. 354064)
5                                              1990 North California Blvd., 9th Floor
                                               Walnut Creek, CA 94596
6                                              Telephone: (925) 300-4455
                                               Facsimile:  (925) 407-2700
7                                              E-mail: ltfisher@bursor.com
                                                        jglatt@bursor.com
8
                                               **GUTRIDE SAFIER LLP**
9                                              Seth A. Safier (State Bar No. 197427)
                                               Marie A. McCrary (State Bar No. 262670)
10                                             Anthony J. Patek (State Bar No. 228964)
                                               100 Pine Street, Suite 1250
11                                             San Francisco, CA 94111
                                               E-mail: seth@gutridesafier.com
12                                                      marie@gutridesafier.com
                                                        anthony@gutridesafier.com
13
                                               *Co-lead Interim Class Counsel*
14
                                               **GUCOVSCHI ROZENSHTEYN, PLLC.**
15                                             Adrian Gucovschi (*pro hac vice*)
                                               140 Broadway, Suite 4667
16                                             New York, NY 10005
                                               Telephone: (212) 884-4230
17                                             Facsimile:  (212) 884-4230
                                               E-mail: adrian@gr-firm.com
18
                                               *Attorneys for Plaintiff Cobbs*
19
                                               **KAPLAN FOX & KILSHEIMER LLP**
20                                             Laurence D. King (State Bar No. 206423)
                                               Matthew B. George (State Bar No. 239322)
21                                             Blair E. Reed (State Bar No. 316791)
                                               Clarissa R. Olivares (State Bar No. 343455)
22                                             1999 Harrison Street, Suite 1560
                                               Oakland, CA 94612
23                                             Telephone: (415) 772-4700
                                               Facsimile:  (415) 772-4709
24                                             E-mail: lking@kaplanfox.com
                                                        mgeorge@kaplanfox.com
25                                                      breed@kaplanfox.com
                                                        colivares@kaplanfox.com
26
                                               *Attorneys for Plaintiff Wheeler*
27

28