UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KRISTIN COBBS,

Plaintiff,

v.

VNGR BEVERAGE LLC,

Defendant.

Case No. 24-cv-03229-HSG

**ORDER GRANTING MOTION FOR FINAL APPROVAL**

Re: Dkt. No. 69

Before the Court is Plaintiffs' unopposed motion for final approval of class action settlement, Dkt. No. 69. The Court held a final fairness hearing on November 20, 2025. Dkt. No. 73. The Court **GRANTS** the motion for final approval.[1]

### I.   BACKGROUND

#### A.   Factual Allegations and Procedural Background

This is a putative class brought on behalf of purchasers of Poppi Prebiotic Soda ("Poppi"). *See* Dkt. No. 54 ("TAC") ¶ 1. Plaintiffs allege that Defendant VNGR Beverage, LLC markets Poppi as "gut healthy" due to its inclusion of prebiotic dietary fiber, but that this representation is misleading, as Poppi actually harms gut health. *Id.* ¶¶ 3, 5. Plaintiffs allege that Poppi is harmful and ineffective due to its low fiber content, high sugar content, and use of agave inulin, a type of

---

[1] The Court will issue a separate order addressing Plaintiffs' motion for attorneys' fees, costs, and awards, Dkt. No. 64, once class members have been given additional time to specifically object to that motion, as discussed in Dkt. Nos. 78 and 79. The Court had previously required Plaintiffs to include language in all notices "specifically stating that Class Members may object to the attorneys' fees motion and request for Plaintiffs' incentive awards." Dkt. No. 61 at 15; *see also* Fed. R. Civ. Proc. 23(h)(1). While Plaintiffs included this language in their publication notices and long-form notice, they accidentally omitted it from the email notice. *See* Dkt. No. 69-1 at 13–14. Out of an abundance of caution, the Court ordered Plaintiffs to send a supplementary email notice informing class members who previously received the email notice and submitted a claim of this specific right. Dkt. No. 79.

prebiotic fiber that, according to Plaintiffs, is less effective for promoting gut health and has been linked to adverse health effects.  *Id.* ¶¶ 3–4.

Specifically, Plaintiffs claim that because Poppi products contain at most two grams of prebiotic fiber, consumers would need to drink more than four Poppi sodas per day for 21 consecutive days in order to notice any positive "prebiotic" effects.  *Id.* ¶ 61.  However, Plaintiffs allege that any such benefits would be offset by the simultaneous consumption of an unhealthy amount of sugar due to Poppi's high sugar content.  *Id.* ¶ 62.  Plaintiffs maintain that consumers reasonably relied on Defendant's "gut healthy" representations when paying a premium for Poppi products, and thus suffered economic injuries due to those misrepresentations.  *Id.* ¶¶ 68–71.

Plaintiff Kristin Cobbs filed an initial complaint in May 2024.  Dkt. No. 1.  The Cobbs action was eventually related to and consolidated with another class action against Defendant in June 2024.  Dkt. Nos. 18, 22.  Plaintiffs filed an amended consolidated complaint in July 2024. Dkt. No. 29.  A third case was then related and consolidated, Dkt. Nos. 31, 36, and Plaintiffs filed a second amended consolidated complaint in August 2024.  Dkt. No. 35.  Defendant then filed a motion to dismiss the second amended complaint.  Dkt. No. 37.  A fourth case was related in October 2024.  Dkt. No. 40.  The consolidated action was then stayed while the parties negotiated and finalized a settlement agreement.  Dkt. Nos. 49, 51.  In December 2024, the parties participated in a full-day mediation with Judge Jay C. Gandhi (Ret.).  *See* Dkt. No. 55-1 ¶ 15.  The parties ultimately entered into a settlement agreement.  *See id.*, Ex. 1 ("Settlement Agreement" or "SA").

The Court granted the parties' request to file a third amended consolidated complaint ahead of filing a motion for preliminary approval and terminated the pending motion to dismiss. Dkt. No. 53.  Plaintiffs then filed the operative third amended consolidated complaint, Dkt. No. 54, which asserts the following causes of action against Defendant: violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"); violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; common law fraud, deceit, and/or misrepresentation; violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); unjust enrichment; breach of express warranty; and breach

of implied warranty. *See* TAC ¶¶ 99–164.

On March 14, 2025, Plaintiffs filed their motion for preliminary approval. Dkt. No. 55. The Court held a hearing on the motion and took it under submission in May 2025. Dkt. No. 59. The Court subsequently directed the parties to submit additional evidence including (1) updated notices that define a household for purposes of the settlement and that explain that claims from people in the same household will be combined as one; (2) a supplemental declaration clarifying the proposed order as discussed on the record; and (3) a redlined version of the notices and claim form. *See id*. The parties submitted a timely response. *See* Dkt. No. 60. The Court then granted the motion for preliminary approval on May 23, 2025. Dkt. No. 61.

Plaintiffs now seek final approval of the class action settlement, and Class Counsel seeks attorneys' fees, costs, and incentive awards for the named Plaintiffs. *See* Dkt. Nos. 64, 69. The Court held a final fairness hearing on November 20, 2025. *See* Dkt. No. 73.

### B.    Settlement Agreement

The key terms of the Settlement Agreement are as follows:

Class Definition: The Settlement Class is defined as "all persons in the United States who, between January 23, 2020 and the Settlement Notice Date, purchased in the United States, for household use and not for resale or distribution, one or more of the Products." SA § Definitions, I. "Products" is defined as "all flavors and package sizes of Poppi's beverages sold between January 23, 2020 and the Settlement Notice Date." *Id.* § Definitions, JJ.

Settlement Benefits: Defendant will make a $8,900,000 non-reversionary payment. SA §§ 1.1, 1.6. This gross settlement fund will cover Court-approved attorneys' fees and costs, settlement administration fees, incentive payments to the named Plaintiffs, and payments to Class Members for approved claims. *Id.* § 1.3. Class Members who submit an approved claim will receive $0.75 per single can of Product purchased, $3.00 per 4-pack of the Products purchased, $6.00 per 8-pack of the Products purchased, and $9.00 per 12-pack or 15-pack of the Products purchased. *Id.* § 6.1.5. The minimum class payment for any approved claim is $5.00 per Household (subject to availability of funds), and the maximum class payment for any approved

claim without proof of purchase is $16.00 per Household.[2] *Id.* If the total value of all approved claims either exceeds or falls short of the funds available for distribution to Class Members, then the amounts of the class payments will be reduced or increased pro rata. *Id.* § 6.4. If there is an upward adjustment, the maximum amount a person who submits a claim without proof of purchase may receive is $80. *Id.* The parties propose that any remaining funds go to Feeding America as the *cy pres* recipient. *Id.* § 1.6.[3]

Release: The named Plaintiffs and all Class Members and their successors, shall:

> release and forever discharge and covenant not to sue, and are permanently enjoined from suing the Released Persons and including Poppi's past, present or future direct or indirect parents, subsidiaries, divisions, affiliates and related entities, stockholders, shareholders, officers, directors, partners, insurers, investors, employees, agents, attorneys, advisors, consultants, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, related companies, divisions, and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, purchasers, and assigns of each of the foregoing) from the Released Claims.

*Id.* § 9.1. "Released Claims" include:

> any and all claims, demands, actions, causes of action, lawsuits, arbitrations, damages, liabilities, or penalties, whether federal or state, known or unknown, asserted or unasserted, regardless of legal theory, legal, equitable, or otherwise, that were or could have been asserted in the Consolidated Action or that arise out of or relate to the labeling, advertising, or formulation of the Products between January 23, 2020 and the Settlement Notice Date.

*Id.* § Definitions, LL. Notice to Class Members will include the following language:

> If you do not Opt-Out, you give up your right to bring a separate lawsuit. To object, you must file a written Objection that complies with the requirements in the Long Form Notice available at www.poppisettlement.com. . . . Do nothing, and you will not receive

---

[2] A "Household" is "any number of persons occupying the same dwelling unit." SA § Definitions, W.

[3] "A *cy pres* award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (internal quotations omitted). As the Court has previously discussed, Feeding America is a non-profit organization that provides free meals and nutrition access and advocates for access to food and nutrition assistance programs. *See* Dkt. No. 61 at 10. As a result, it shares Settlement Class Members' interest in promoting accurate nutrition and health information to the public. Accordingly, the Court finds that Feeding America is an appropriate recipient for *cy pres* distribution under the Ninth Circuit's requirements.

a Class Payment and you will release the Released Claims against Defendant that relate to the allegations in the lawsuits.

SA, Exs. B, C (emphasis omitted).

Incentive Awards: Class Counsel may apply for an incentive award for each of the named Plaintiffs of no more than $5,000.  SA § 8.2.

Attorneys' Fees and Costs: The Settlement Agreement provides that Class Counsel will apply for an award of up to 30% of the gross settlement amount.  *Id.* § 8.1.  Plaintiffs' motion for attorneys' fees states that Class Counsel requests $2,670,000 in attorneys' fees (30% of the gross settlement amount) and $23,593.48 in costs.  Dkt. No. 64 at 9.[4]

Opt-Out Procedure: Class Members must object to the Settlement Agreement or opt out (via regular mail only) within 60 days after the date that the notice plan commences.  SA §§ 4.3, 4.4, 5.2, 5.4.

## II.    FINAL SETTLEMENT APPROVAL

### A.    Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rules of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–22 (9th Cir. 1998).  Because no facts that would affect these requirements have changed since the Court preliminarily certified the class on May 23, 2025, this order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval.  *See* Dkt. No. 61 at 6–7.

### B.    The Settlement

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval."  Fed. R. Civ. Proc. 23(e).  The Court may finally approve a class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate."  *Id.* 23(e)(2).  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).

---

[4] For ease of reference, the Court refers to ECF pagination rather than the document's internal pagination unless otherwise noted.

To determine whether a settlement is fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025) (quoting Fed. R. Civ. Proc. 23(e)(2)).[5] In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.

Where the parties reach a class action settlement prior to class certification, the Ninth Circuit has cautioned that such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). "This more exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* (internal quotations marks and citations omitted).

The Ninth Circuit has identified several "subtle signs" the Court should consider in determining whether "class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Roes*, 944 F.3d at 1043 (quotation omitted). These include: "(1) when counsel receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns

---

[5] Before 2018, courts applied what were often referred to as the "*Hanlon*" factors, as articulated in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "The key *Hanlon* factors are now baked into the text of Rule 23(e), and the remaining ones can still be considered for Rule 23(e)(2) analysis." *In re Cal. Pizza Kitchen*, 129 F.4th at 674.

unawarded fees to the defendant, rather than the class." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607–08 (9th Cir. 2021) (quotation omitted).  As discussed below, the Court finds that Class Members received adequate notice, there is no evidence of collusion or conflicts of interest, and the proposed settlement is fair, adequate, and reasonable.

### i.   Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. Proc. 23(e)(1)(B).  For a damages class, this requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *Id.* 23(c)(2)(B).  The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, the class members' right to exclude themselves from the class, the time and manner for requesting exclusion, and the binding effect of class judgment.  *Id.*  Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice.  *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B).  *See* Dkt. No. 61 at 13–15.  First, Verita, the Settlement Administrator, posted copies of the Notice, Claim Form, and other case-related documents on the settlement website.  *See* Dkt. No. 69-1 ("Antonio Decl.") ¶ 10.  Second, Verita successfully delivered 304,196 email notices to the Class Members for whom Defendant provided valid email addresses.  *Id.* ¶¶ 5–7.  For Class Members whose emails were undelivered, Verita made two additional delivery attempts.  *Id.*[6]  Third, Verita published the Summary Notice as a quarter-page ad in four issues of *USA Today* in the Los Angeles, San Francisco, and Phoenix regions.  *Id.* ¶ 8. Fourth, Verita programmatically delivered more than 30 million advertising impressions via various websites and mobile apps, as well as on Facebook and Instagram, from July 18, 2025,

---

[6] Verita could not deliver 96,328 emails after three attempts.  Antonio Decl. ¶ 7.

through September 15, 2025. *Id.* ¶ 9. Fifth, Verita established and maintained a toll-free settlement number, which received 291 calls. *Id.* ¶ 12. As of October 17, 2025, Verita received no objections to the settlement, and only six Class Members requested exclusion. *Id.* ¶¶ 17–18.[7]

### ii. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

In evaluating the motion for preliminary approval, the Court considered all three signs of collusion that the Ninth Circuit has identified. *See* Dkt. No. 61 at 8–9; *see also McKinney-Drobnis*, 16 F.4th at 607–08. Nothing in the record changes the Court's preliminary conclusion regarding these factors. The proposed settlement is non-reversionary; there is no clear sailing agreement; the majority of the monetary settlement will be distributed to the class; and the Court still carefully scrutinizes the request for attorneys' fees and costs to ensure class members' interests are protected under the settlement.[8]

The Court further finds that the other factors discussed in Rule 23(e) indicate that the proposed settlement is fair, adequate, and reasonable.

### a. Adequacy of Representation

First, the Court must consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. Proc. 23(e)(2)(A). The Court previously found that Plaintiffs and Class Counsel have prosecuted the action vigorously and that there is no evidence that either have a conflict with other class members. Dkt. No. 61 at 6. Nothing in the record here changes that conclusion. In addition, while this case was at a relatively early stage and little discovery had been conducted, the Court is persuaded that Class Counsel "had sufficient

---

[7] As mentioned, the Court has ordered Plaintiffs to provide additional notice regarding Class Members' right to object to the attorneys' fees. The notice required before awarding fees under Rule 23(h) is separate from the notice required for settlement under Rule 23(e), so the Court does not discuss this additional notice here.

[8] The Court will issue a separate order addressing whether Plaintiffs' request for an above-benchmark fees award is warranted. But nothing about Plaintiffs' request—including the full amount requested—suggests that "class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Roes*, 944 F.3d at 1043.

United States District Court
Northern District of California

information to make an informed decision" about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000); Dkt. No. 69 at 16–17 (discussing preparation and research prior to settlement). Accordingly, this factor weighs in favor of approval.

### b. Arm's Length Negotiation

Next, the Court must consider whether the Settlement Agreement was negotiated at arm's length. Fed. R. Civ. Proc. 23(e)(2)(B). This agreement was facilitated through arm's-length discussions overseen by a neutral mediator, *see* Dkt. No. 55-1 ¶ 13, thereby reducing the likelihood of fraud or collusion, *see Estorga v. Santa Clara Valley Transp. Auth.*, No. 16-CV-02668-BLF, 2020 WL 7319356, at *6 (N.D. Cal. Dec. 11, 2020). The Court's findings about the three subtle signs of collusion also support the conclusion that this agreement was negotiated at arm's length. Accordingly, this factor also weighs in favor of approval.

### c. Adequacy of Relief

Next, the Court must consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. Proc. 23(e)(2)(C).[9]

First, the Court finds that the amount offered in settlement is reasonable in light of the complexity of this litigation and the substantial risk that Plaintiffs would face in litigating the case given the nature of the asserted claims. Were this case to proceed, Plaintiffs anticipate significant risks to recovery. *See* Dkt. No. 69 at 13–14. Plaintiffs emphasize that the Court has not yet ruled on Defendant's motion to dismiss, which seeks disposal of the entire case. *See id.* at 13. Plaintiffs similarly anticipate that certifying a class and maintaining class status through trial would present substantial obstacles. *See id.* at 14. Difficulties and risks in litigation weigh in favor of approving

---

[9] There are no agreements required to be identified under Rule 23(e)(3) here, so the Court does not discuss this final factor. Mot. at 19–20.

a class settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-CV-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotation omitted).

The Court previously concluded that the settlement amount here is within the range of possible approval, *see* Dkt. No. 61 at 11–12, and its opinion has not changed. Plaintiffs' counsel represents that the price premium associated with Plaintiffs' gut health claims is likely between five and ten percent. Dkt. No. 69 at 15 (citing Dkt. No. 55-1 ¶ 19). Assuming this is correct, if Plaintiffs recovered the entire amount of monetary damages available under the price premium model at trial, the maximum potential recovery available to each class member would be approximately $0.13–$0.25 per can. *Id.* Under the settlement, each Class Member with an approved claim is entitled to a payment of up to $0.75 per can purchased, $3.00 per 4-pack purchased, $6.00 per 8-pack purchased, and $9.00 per 12-pack or 15-pack purchased. *Id.* These amounts constitute a significant percentage of the retail cost of these cans and the anticipated maximum recovery at trial. *Id.* Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the settlement amount falls "within the range of reasonableness" in light of the risks and costs of litigation. *See Villanueva v. Morpho Detection, Inc.*, No. 13-CV-05390-HSG, 2016 WL 1070523, at *4 (N.D. Cal. Mar. 18, 2016) (collecting cases).

Second, the Court finds that the claims process was effective. The claims process has apparently gone better than expected, resulting in a higher anticipated total distribution than the parties predicted. *See* Dkt. No. 69 at 8. The deadline to submit claims was September 26, 2025. *See* Antonio Decl. ¶ 13. As of October 17, 2025, Verita had received approximately 2.5 million claims without proof of purchase that appear to be valid pending final review, allowing for distribution of no more than $16 per claimant, depending on the number of approved claims and the amount of the settlement fund devoted to other costs. *Id.* ¶ 15. There were also 38,542 claimants who provided receipts/proof of purchase that are also pending final review. *Id.* Verita was able to identify 137,942 duplicate claims and 1.8 million fraudulent submissions. *Id.* ¶¶ 14–

United States District Court
Northern District of California

10

15. Given this, the Court is persuaded that the claims process was able to identify valid claims without making the submission process unduly burdensome.

Third, while the Court will address Plaintiffs above-benchmark attorneys' fees request in a separate order, the Court does not find that their request renders the settlement amount otherwise inadequate. Accordingly, the Court finds that this factor also favors approval.

#### d. Equitable Treatment of Class Members

Finally, the Court must consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. Proc. 23(e)(2)(D). This factor ensures that an agreement does not "improperly grant[] preferential treatment to class representatives or segments of the class." *Perks v. Activehours, Inc.*, No. 5:19-CV-05543-BLF, 2021 WL 1146038, at *6 (N.D. Cal. Mar. 25, 2021) (quotation omitted). Here, all Class Members are entitled to the same relief, and the payments are calculated on a pro rata basis depending on the number of cans each member purchased. "This pro rata distribution is inherently equitable because it treats Class Members fairly based on the amount of each member's potential damages." *Id.*

#### e. Reaction of Class Members

While not one of the explicit Rule 23(e) factors, the reaction of the Class Members also supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *see also In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

As discussed above, the settlement terms were publicized through a notice process that the Court has deemed adequate. Only six members requested exclusion from the settlement, and none of the Class Members objected. *See* Antonio Decl. ¶¶ 17–18. The Court finds that the positive reaction of the settlement class supports approval of the settlement.

*        *        *

After considering and weighing the above factors, the Court finds that the Settlement

11

Agreement is fair, adequate, and reasonable, and that the Settlement Class Members received adequate notice. Accordingly, Plaintiffs' motion for final approval of the class action settlement is **GRANTED**.

### III.   CONCLUSION

Accordingly, the Court **GRANTS** the motion for final approval of class action settlement, Dkt. No. 69. Once the Court issues its order on Plaintiffs' motion for attorneys' fees, costs, and awards, the parties and settlement administrator are directed to implement this final order and the settlement agreement in accordance with the terms of the settlement agreement.

Class counsel shall file a Post-Distribution Accounting within 21 days after the settlement checks become stale (or, if no checks are issued, all funds have been paid to Class Members, *cy pres* beneficiaries, and others pursuant to the Settlement Agreement). In addition to the information contained in the Northern District of California's Procedural Guidance for Class Action Settlements, available at https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/procedural-guidance-class-action-settlements, the Post-Distribution Accounting shall discuss any significant or recurring concerns communicated by Class Members to the settlement administrator or counsel since final approval, any other issues in settlement administration since final approval, and how any concerns or issues were resolved. Counsel is directed to summarize this information in an easy-to-read chart that allows for quick comparisons with other cases. The parties shall post the Post-Distribution Accounting, including the easy-to-read chart, on the settlement website. The Court may hold a hearing following submission of the parties' Post-Distribution Accounting.

**IT IS SO ORDERED.**

Dated:   4/14/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

12